TERRELL, Justice.
This is our second consideration of this case. See Overman v. Board of Control, Fla., 62 So.2d 696, for fuller statement of facts. Pursuant to hearing held October 21, 1953, the chancellor entered a final decree in which he found that the University of Miami, College of Medicine, had “complied with all of the provisions of Chapter 26763 and with all of the requirements of the Council of Medical Education and Hospitals of the American Medical Association for the scholastic year 1952-1953, the first year of its operation * * * ”, that it had “filed with said Board of control documentary proof that such institution has met all of the requirements of .the Council on Medical Education and Hospitals of the American Medical Association * * * for the period of its first scholastic year, 1952-1953” and that the University of Miami was, therefore, “entitled to receive from the sum of $225,000, appropriated by 'Chapter 26763, Laws of 1951, the sum of $3000 for each student admitted and enrolled in the Medical College of such institution in the scholastic year 1952-1953.” The Board of Control was directed to pay the proper amount and the Governor and Comptroller were advised and directed to sign the necessary warrants. Appellants, as intervenors, have appealed by certiorari from the final decree.
Appellants have argued four questions and appellees have argued three, none of which conform to the rule prescribed in Kneale v. Kneale, Fla., 67 So.2d 233. The gist of appellants’ contention is (1) that the chancellor committed error in requiring-that the subsidy provided by Chapter 26763, Acts of 1951, F.S.A. §§ 242.62,' 242.63, be paid to the University of Miami College of Medicine absent provisional approval by the Council of Medical Education and Hospitals of the American Medical Association (2) that the chancellor’s application of Chapter 26763 amounted to judicial legislation. This is a two phase question, both phases of which will be treated together.
At the outset it is not amiss to point out that the Governor and the Comptroller waived their rights of appeal, expressed their satisfaction with the chancellor’s determination of the' issues presented, and have drawn and countersigned the necessary warrants to pay the University of Miami College of Medicine the subsidy authorized by Chapter 26763, Acts of 1951. The said warrants are now being held in the registry of the court pending the outcome of this appeal.
 We first dispose of the contention that the chancellor’s application of the statute amounts to judicial legislation. This-contention is predicated on the assumption that the term “accredited and approved medical school” as used in Chapter 26763, Acts of 1951, providing the subsidy, shall be one approved and accredited by the Council on Medical Education and Hospi- *264 tais of the American Medical Association. Appellants say that no other authority could or was authorized to pass on the question of accreditation and when the chancellor accepted the testimony of sponsors of the Miami Medical School to prove the fact of provisional accreditation and accepted their testimony as concluding' the point, his determination amounted to judicial legislation.
It is quite true that in Overman v. State Board of Control we held that the legislature intended that the appropriation be available each year provided the first medical school has met all requirements of the act and the American Medical Association to that date. As pointed out in said opinion representatives of the American Medical Association had been to Miami and made a thorough survey of Medical and Hospitals potentialities and spelled out the requirements for accreditation for Miami University Medical School. When the school was established and had completed its first year it requested the American Medical Association to give it provisional accreditation but was advised that it did not provisionally accredit any school. It was advised, however, that if it met all requirements for accreditation at the end of four years it would be so accredited.
Since the American Medical Association refused provisional accreditation, the Miami Medical School resorted to the next best source of proof to establish that fact. To show that for its first year of operation it met all requirements of the American Medical Association for accreditation it called to witness Hollis Rhinehart, 'Chairman of the State .Board of Control, Dr. J. F. W. Pearson, President of the University of Miami, Dean Nash of the University of Miami Medical School, Dr. Charles C. Hill-man, Executive Director of Jackson Memorial Hospital, Dr. Ralph W. Jack, President of the Dade County Medical Association, Hon. Preston B. Bird, County Commissioner and Chairman of the Home, Hospital and Welfare Committee- of Dade County for ten years, and Robert M. Morgan, a certified public accountant and Chairman of the Medical School Committee of the Miami Chamber of Commerce, in all seven witnesses who were familiar with and testified as to the requirements of the American Medical Association for accreditation. They were also familiar with the requirements of Chapter 26763 with reference to establishment and accrediting Miami University Medical School. An examination of their testimony, reveals ample support for the chancellor’s decree. It was the best evidence from the best source obtainable to support the fact of provisional accreditation, in fact, Dr. Ralph W. Jack, President- of the Dade County Medical Association, testified that during the last five years he had inspected the Medical Schools of Johns Hopkins, Harvard, Cornell, University of Virginia, Medical College of Virginia at Richmond, Tulane Medical School, Louisiana State Medical School, Southwestern Medical College, University of California, Leland Stanford, University of Nebraska, University of Minnesota, New York University and Bellview College of Medicine, and that the facilities available for the first year classes at Miami University Medical School compared very favorable with these. We think the chancellor was warranted in grounding his final decree on this and other testimony before him and that in doing so he could not properly be charged with judicial legislation.
If the Council on Medical Education and Hospitals of the American Medical Association is the only source from which provisional accreditation can be proven it would be impossible for Miami University Medical School to be accredited and receive the subsidy until it has a four year medical school ready for final approval and accreditation. This Court and the lower court were advised of the policy of the accrediting council to refrain from expressing approval as to accreditation until the school had classes in the required four year curriculum. The pleadings, the briefs and our former opinion show this. This Court and the Circuit 'Court were also advised of the report of Dr. Weiskotten and Dr. Hinsey of the American Medical Association, defining the requirements for accreditation.
*265 In Overman v. State Board of Control we pointed out the policy of the American Medical Association to approve and accredit no Medical' College until it was in full operation with classes in each four years of the curriculum. We further pointed out in that opinion that Florida is the largest state in the union without a medical school. It is the only state in the south without one. Not only that, hut Florida is contributing largely to out of State Medical Schools for the medical education of Florida men and women. From this and much more pointed out in that opinion, there can be no doubt about the legislative mind and purpose when it promulgated Chapter 26763. That purpose was to encourage the establishment of a medical school and secure the best medical educational facilities possible for the people of this state at the earliest date possible. Said opinion defines the law of the case about as clearly as we can define it and in the main answers the question raised in this case.
When the purpose of the legislature is so clearly expressed as it was in Chapter 26763, by appropriating $225,000 as subsidy for Florida medical students to be available each year’ beginning with the 1952-1953 term and then follows it in 1953 with an appropriation of $309,000 for that year and $843,000 for the biennium, it is the duty of courts to. interpret such acts.so as to effectuate the legislative will. There certainly is no reason to warrant a court in basing its interpretation On the subtle nuances of the law that, lead to a result foreign to the legislative intent. Read in sum the legislative intent in Chapter 26763 is so clear that it defies interpretation. It is as evident as a coon skin on the barn door of a trapper, as plain as the “makeup” on the lips and countenance of a flapper.
The decree appealed from is accordingly affirmed.
Affirmed.
ROBERTS, C. J„ HOBSON and DREW, JJ., and TILLMAN and CARROLL, Associate Justices, concur.
THOMAS, J., not participating.