251 So.2d 252 (1971)
Martha Ward GARNER, Etc., Petitioner,
v.
Vera Wilson WARD, Etc., et al., Respondents.
No. 40114.
Supreme Court of Florida.
July 7, 1971.
Rehearing Denied September 3, 1971.
*253 A.K. Black, and J.B. Hodges, of Hodges & Bergen, Lake City, for petitioner.
Paul Bernardini, of Sands, Smalbein, Eubank, Johnson & Rosier, Daytona Beach, for respondents.
ADKINS, Justice.
Certiorari was granted in this action to review the decision of the District Court of Appeal, First District (237 So.2d 25), which conflicts with a decision of the District Court of Appeal, Fourth District (Powell v. Gessner, 231 So.2d 50, writ disch., Fla., 238 So.2d 101) on the same point of law. Fla. Const., art. V, § 4 (F.S.A.)
The decisions here for review both concern application of Fla. Stat. §§ 768.01 and 768.02, F.S.A., which are companion measures to Fla. Stat. § 768.03, F.S.A. These sections provide for causes of action upon the wrongful death of an individual. Fla. Stat. § 768.02, F.S.A., specifies the persons who may bring such actions as follows:
"Every such action shall be brought by and in the name of the widow or husband, as the case may be, and where there is neither widow nor husband surviving the deceased, then the minor child or children may maintain an action; and where there is neither widow nor husband, nor minor child or children, then the action may be maintained by any person or persons dependent on such person killed for a support; * * *."
As the statutory language makes clear, the purpose of the act is to protect the family and dependents of an individual in event of wrongful death.
The question presented is whether the language of Fla. Stat. § 768.02, F.S.A., should be given literal application, even though the result is unquestionably harsh in many cases; or whether it should be construed and applied in light of its remedial purpose.
In the case sub judice, the facts are as follows: Decedent had been twice married, having children by his first marriage who remained dependent on him for their support. Upon his death, the statutory cause of action survived to his then spouse, who was his second wife. Decedent's wife filed suit. Decedent's first wife then attempted to intervene individually and on behalf of the dependent minor children; the trial court denied intervention. The District Court of Appeal affirmed the trial court's order, which had the effect of leaving the dependent children without remedy for their loss of support. In its order, the District Court of Appeal relied on three prior decisions: Fussell v. Douberly, 206 So.2d 231 (Fla.App.2d, 1968); Holland v. Hall, 145 So.2d 552 (Fla.App.1st, 1962); and Randolph v. Clack, 113 So.2d 270 (Fla.App.2d, 1959).
*254 In Fussell, supra, a mother died, leaving a spouse and minor dependent children, the spouse being a stepparent. The Court held that only the stepfather could maintain an action under the literal terms of Fla. Stat. §§ 768.01 and 768.02, F.S.A., that the stepfather owed no duty of support to the dependent stepchildren, and that the stepchildren had no right of action for their mother's death and no claim for any damages recovered by their stepfather as a result of their mother's death. In its opinion, the District Court of Appeal complained of the harshness and inequity of the result it felt compelled to reach.
In Holland v. Hall, supra, a surviving stepparent who brought action was not permitted to claim damages for the decedent wife's dependent minor children, although the decedent wife maintained the children; the Court held the stepparent had no legal duty of support, and that the children under the statute were entitled to no relief for the loss of their mother's love and support. The District Court of Appeal commented on the harshness and inequity of the result, and suggested the need for remedial legislation.
In Randolph v. Clack, supra, a parent was wrongfully killed, and surviving children by decedent's first marriage were left without remedy or support, the cause of action vesting in the second wife. The District Court of Appeal commented on the harshness and inequity of result, but added that it did "not feel free to liberalize the construction of Sec. 768.02."
The three decisions discussed above all followed the decision of Ellis v. Brown, 77 So.2d 845 (Fla. 1955), in which this Court complained of the harshness and inequity of the statute, and suggested the need for remedial legislation. Also, see Strickland v. Atlantic Coast Line Railroad Co., 194 So.2d 69 (Fla.App.1st, 1967) in which the District Court of Appeal applied Fla. Stat. § 768.02, F.S.A., and noted the need for remedial legislation.
In Powell v. Gessner, supra, with which conflict is assigned, the District Court of Appeal, Fourth District, declined to apply literally the language of Fla. Stat. § 768.02, F.S.A. Whereas other cases concerning survival of causes of action under the statute concerned rights and remedies as between the first and second classes of the statute (surviving spouses or minor children), the Powell case involved the second and third classes (minor children or dependent persons). Because the issue in either case is whether the statute is to be applied literally or in light of its remedial purpose, this difference is not a distinction. The facts in Powell, supra, were that a decedent was survived by a child and a dependent parent. The child sued; the District Court of Appeal held that the dependent parent had a better right to bring action, despite the literal terms of the statute, because the minor child had been adopted and adoption in Florida severs most [but not all] legal obligations between natural parents and the child. The decision of the District Court of Appeal, Fourth District, in declining to apply the literal language of Fla. Stat., § 768.02, F.S.A., creates sufficient conflict to support jurisdiction in this Court. This conflict is made clear and unmistakable when the construction of Fla. Stat. § 768.02, F.S.A., is compared with that of Fla. Stat. § 768.03, F.S.A., a companion statute.
Fla. Stat. § 768.03, F.S.A., establishes causes of action in certain persons for the death of a minor child. The statute provides that a cause of action shall exist in
"* * * the father of such minor child, or if the father be not living, the mother may maintain an action * * *."
Initially, the judicial construction given Fla. Stat. § 768.03, F.S.A., was literal, just as it has been as to Fla. Stat. § 768.02, F.S.A. In Mock v. Evans Light & Ice Co., 88 Fla. 113, 101 So. 203 (1924), this Court held that where a child was living with its adoptive mother when killed, but where its *255 natural father survived, the cause of action for wrongful death survived exclusively to the natural father even though the father did not support or live with the child. The Court applied the statute by its literal terms in holding that the cause of action vests in the father if living, and if not living then to the mother. Compare Powell v. Gessner, supra.
The harsh result reached in Mock v. Evans Light & Ice Co., supra, as to Fla. Stat. § 768.03, F.S.A., was overruled in Haddock, for Use and Benefit of Wiggins v. Florida Motor Lines Corporation, 150 Fla. 848, 9 So.2d 98 (1942). In this case, a minor child was killed. Although the father was living (but divorced), the mother brought suit. This Court stated:
"It is insisted that the mother has no action because the statute places same only in the father. With this construction of the statute, we cannot agree. It is clear from the spirit and letter of the statute that the legislature intended that the mother should be compensated for the wrongful death of her child. * * *
"The purpose of the statute was to grant to the parent or parents a cause of action for the wrongful death. In providing for parties necessary to sue it was contemplated that the mother and father were married. The effect in law, of the decree of divorce and change of custody was to grant to her the right to the child's services. * * *
"The conclusion we have reached is admittedly contra to Mock v. Evans Light and Ice Company, * * *. We are reluctant to recede from the latter opinion but being so thoroughly convinced that the legislature placed a right of action in the mother and realizing the great and ever present responsibility and obligation resting on us by * * * our Constitution, we now recede from the opinion of this Court in Mock v. Evans Light and Ice Company, * * *. Here, the intent of the legislature to grant the cause of action is clear and unmistakable. The only question is, who shall exercise the right of action." (9 So.2d pp. 99-100)
The Court in Haddock for Use and Benefit of Wiggins v. Florida Motor Lines Corporation, supra, noted that it considered a literal application of the statute, denying the mother a cause of action, would violate the constitutional mandate that the courts shall be open to all persons for redress of injury. See Fla. Const., art. I, Declaration of Rights, § 21 (1968).
When the decisions are examined which have applied Fla. Stat. §§ 768.01, 768.02 and 768.03, F.S.A., to broken families or families in which step-relationships exist, the conflicts clearly appear. Some of these decisions have applied literally the statutory language as to priorities in persons  often with harsh results that have generated judicial protest. Other decisions have recognized that strict application as to families broken or in which step-relationships exist may be unjust, and have applied the statute remedially in order to implement its purpose of family protection.
It is a proper function of the courts to examine Fla. Stat. §§ 768.01, 768.02 and 768.03, F.S.A., together. It is an accepted maxim of statutory construction that a law should be construed together with and in harmony with any other statute relating to the same subject matter or having the same purpose, even though the statutes were not enacted at the same time. Sanders v. State ex rel. Shamrock Properties, Inc., 46 So.2d 491 (Fla. 1950); Tampa and J.R. Co. v. Catts, 79 Fla. 235, 85 So. 364 (1920).
Without question, the statutes here under examination are capable of more than one construction when applied to factual situations such as occur in the case sub judice. It is an accepted rule of law that if a statute is susceptible of more than one construction, it should be given the construction which will effectuate or carry *256 out its purpose. McDonald v. Roland, 65 So.2d 12 (Fla. 1953); Beebe v. Richardson, 156 Fla. 559, 23 So.2d 718 (1945). This is true even though the construction given is not within the literal, strict application of the language. In re Blankenship's Estate, 114 So.2d 519 (Fla.App.2d, 1959); Ft. Lauderdale v. DesCamps, 111 So.2d 693 (Fla.App. 1959); Hanson v. State, 56 So.2d 129 (Fla. 1952). A statute should be construed to give effect to the evident legislative intent, even if the result seems contradictory to the rules of construction and the strict letter of the statute; the spirit of the law prevails over the letter. Beebe v. Richardson, supra. The intent prevails where strict application of the letter of the law would defeat its purpose, or be absurd. Knight & Wall Co. v. Tampa Sand Lime Brick Co., 55 Fla. 728, 46 So. 285 (1908).
This Court is aware of its duty to effectuate the legislative will. Overman v. State Board of Control, 71 So.2d 262 (Fla. 1954). In applying Fla. Stat. §§ 768.01 and 768.02, F.S.A., difficulties have arisen in situations involving broken families or families with step-relationships. The legislative intent with regard to the wrongful death statutes "is clear and unmistakable," as this Court noted in Haddock for Use and Benefit of Wiggins v. Florida Motor Lines Corporation, supra. That legislative intent is clearly expressed in Fla. Stat. § 768.01, F.S.A., as being the establishment of a right of action for wrongful death; Fla. Stat. § 760.02, F.S.A., specifies the persons who may bring such action; Fla. Stat., § 768.03, F.S.A., also creates a cause of action for the wrongful death, of a minor child, and vests in the father if living, otherwise the mother. As noted in Haddock for Use and Benefit of Wiggins v. Florida Motor Lines Corporation, supra, the primary purpose is to create a cause of action for wrongful death, and secondarily to specify who may bring the action to implement the greater purpose.
It is the legislative purpose in these wrongful death acts to establish causes of action, and to vest these causes in classes of persons in descending order of priority. The authority of the legislature to establish such classes is not questioned. See Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894); Benoit v. Miami Beach Electric Co., 85 Fla. 396, 96 So. 158 (1923). Also see Love v. Hannah, 72 So.2d 39 (Fla. 1954); In re Moore's Estate, 153 Fla. 480, 15 So.2d 55 (1943); Birdsong v. Henry, 128 So.2d 404 (Fla.App.2d, 1961); Steffan v. Zernes, 124 So.2d 495 (Fla.App.1st, 1960). The existence of priorities ordered on family relationships or dependency presupposes the existence of such relationships; the preference given by statute to a spouse over a child presupposes the existence of a family, including a parent-child relationship, in the survivors. When the statutes are examined entire, the conclusion cannot be reasonably reached that these class priorities were intended by the legislature to be applied where the fundamental family relationships have been legally destroyed through divorce or adoption, or step-relationships have been created. It is unreasonable to conclude the legislature intended that dependent children or other family members be left without support or remedy, in favor of strangers to them.
We are not unaware of the doctrine that when a statute has been construed by the courts, and subsequently re-enacted, the legislature is presumed to be familiar with the judicial construction and to adopt it as part of the law. Johnson v. State, 91 So.2d 185 (Fla. 1956); Foley v. State ex rel. Gordon, 50 So.2d 179 (Fla. 1951). The maxim has no application in the present facts, however, because Fla. Stat. §§ 768.01, 768.02 and 768.03, F.S.A., have not been specifically re-enacted subsequent to the conflicting decisions under examination. Application of the maxim to the statutes involved in this case would impute to the legislature the illogical and unreasonable intent to incorporate by reference conflicting judicial constructions; the canons of construction cannot be extended to reach such a result. For these reasons, re-examination of decisions construing the statutes does not collide with any legislative pronouncements *257 or re-enactments in reference to them, nor disturb settled law. The doctrine of acquiescence appears inapplicable.
We are aware of the risks that attend a change in construction of a statute. The doctrine of stare decisis serves many noble ends, not the least of which are the achievements of consistency, even-handedness and predictability of the law. Every departure from precedent must be examined in light of these values. In the case at bar, the decisions under examination have not been consistent and such consistency as exists has been achieved under protest; have not been even-handed; and have not aided predictability because every decision implementing the statute has called for a change in the statute. In addition, the decision we reach in the case sub judice settles, rather than confuses, the law.
For the reasons announced herein, we conclude that Fla. Stat. §§ 768.01 and 768.02, F.S.A., must be construed in harmony with Fla. Stat. § 768.03, F.S.A., to procure the remedial protection of families and dependents as intended by the Legislature. The direction better calculated to implement the legislative goal is that pointed by the District Court of Appeal, Fourth District, in Powell v. Gessner, supra, as to Fla. Stat. § 768.02, F.S.A., and by this Court in Haddock for Use and Benefit of Wiggins v. Florida Motor Lines Corporation, supra, as to Fla. Stat. § 768.03, F.S.A. This policy will better honor the constitutional command that the courts be open to all persons for redress of wrongs, and also will avoid the risk of a constitutional challenge grounded on allegations of discrimination among survivors of the same class (such as litigation between decedent's children by two marriages).
Under the factual circumstances of cases such as this, all persons who suffer loss as a result of the wrongful death and who are entitled to recover are proper parties. All such persons may join, or upon motion by the defendant should be joined by the court if it has jurisdiction. Any person may at any time be made a party if his presence is proper to a complete determination of the cause. Rule 1.210(a), Florida Rules of Civil Procedure (1967), 30 F.S.A. Rule 1.250(c), which vests in the trial court authority to add parties on motion or its own initiative, is peculiarly useful in actions such as that sub judice. Also, see Rule 1.270(a), authorizing consolidated trial of any and all issues. In these cases, the damages suffered by each survivor entitled to sue must be separately proved and separately assessed.
The decision of the District Court of Appeal is quashed; we recede from those opinions on which the District Court of Appeal relied, and of this Court in Ellis v. Brown, supra, and other similar decisions, to the extent they are inconsistent with the law expressed herein. This cause is remanded for further proceedings consistent with this decision.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, BOYD, McCAIN and DEKLE, JJ., concur.