QUESTIONS: 1. Does Ch. 74-13, Laws of Florida, which amends s.104.31, F.S., have the effect of preempting or prohibiting the exercise of municipal legislative power to regulate the subject matter of political activities of municipal employees? 2. If question 1 is answered in the affirmative, does such preemption or prohibition extend to the regulation of political activities of elected municipal officials who receive a monthly compensation? 3. Are the provisions of s. 9.02(A)(4) of the new charter of the City of Largo violative of the United States Constitution?
SUMMARY: Unless and until otherwise clarified by judicial or legislative action, the amendment of s. 104.31, F.S., effected by Ch. 74-13, Laws of Florida, should be regarded as an express legislative prohibition or preemption of municipal regulation of the political activities of all municipal officers and employees and as an impediment to the exercise of municipal legislative power to regulate such activities. AS TO QUESTION 1: Section166.021(1), F.S., of the Municipal Home Rule Powers Act provides in pertinent part that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." See City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974), upholding the constitutionality of s. 166.021, supra. A further limitation on the exercise of municipal legislative power is found at s. 166.021(3)(c), which excepts from such power "[a]ny subject expressly preempted to state or county government by the constitution or by general law. . . ." Since it seems clear that the regulation of the political activities of municipal employees is a "municipal purpose," the question to be resolved is whether such regulation is expressly prohibited by law or has been expressly preempted to state or county government. The courts have yet to establish much in the way of general rules for application in the construction to be given to the Municipal Home Rule Powers Act, Ch. 166, F.S. Accordingly, until such time as we are favored with judicial clarification, questions of this nature will have to be resolved on a case-by-case basis. As you are aware, s. 104.31, F.S. — Florida's "Little Hatch Act" — regulates the political activity of all public officers and employees in the state. The purpose of the statute has been described in State v. Stuler,122 So.2d 1 (Fla. 1960), at p. 3: The obvious objective to be accomplished by statutes of the type under consideration is to preserve the political purity of public employment and to protect public employees against harassment and political annoyances as conditions to holding their jobs. Likewise public employees are thereby shielded against pressures or annoying solicitations for political contributions in order to curry favor with some elected official charged with the supervision of the particular employees. Accord: Attorney General Opinion 072-62, which discusses at length the application of the statute prior to its 1974 amendment. Chapter 74-13, Laws of Florida, creates a new subsection (3) of s.104.31, F.S., which provides: Nothing contained in this section or in any county or municipal charter shall be deemed to prohibit any public employee from expressing his opinions on any candidate or issue or from participating in any political campaign during his off-duty hours so long as such activities are not in conflict with the provisions of subsection (1) of this section or of section 110.092. The language quoted above is an express manifestation of a legislative intent to regulate and make uniform the rights of public employees to participate in the political process and to impose only those limits on such activity as are required by the exigencies of public service. Further, this legislative intent is confirmed by the title to the act, which states, inter alia, that it is "to assure freedom of expression and participation in the political process by public employees to the extent compatible with the public welfare. . . ." In these circumstances it seems clear that the legislative intent was to preempt or prohibit municipal regulation of this subject matter; and in my opinion such purpose and intent is of equal force and effect as though the Legislature had employed express language connoting the same legal consequences. Garner v. Ward,251 So.2d 252 (Fla. 1971); Curry v. Lehman, 47 So. 18 (Fla. 1908); Knight 
Wall Co. v. Tampa Sand Lime Brick Co., 46 So. 285 (Fla. 1908). Accordingly, I am of the view that the subject matter of political activities of municipal employees must be considered as being a subject matter the regulation of which has been either "expressly preempted to state . . . government . . . by general law" within the meaning of s. 166.021(3)(c), F.S., or expressly prohibited by law within the contemplation of s. 166.021(1), F.S. Thus, I am of the opinion that, unless and until further clarified by legislative or judicial action, the amendment of s. 104.31, F.S., effected by Ch. 74-13, supra, should be regarded as an impediment to the exercise of municipal legislative power to regulate the subject matter of political activities of municipal employees. Question 1 is answered accordingly. AS TO QUESTION 2: At the inception, it should be noted that the manner in which an elected public officer is compensated has nothing to do with the answer to this question. Section 104.31, F.S., affects all elected public officers regardless of how or when they are compensated, or whether they are compensated or not. As previously observed in the answer to question 1, above, the limitations on a municipality's exercise of legislative power include subject matters the regulation of which have been expressly prohibited by law or have been expessly preempted to state government by general law. In this instance, the operation and effect of the 1974 amendment to paragraph (d) of subsection (1) of s. 104.31, F.S., seems clear upon examination of the statutory language deleted by the amendment. The deleted phrase reads: "unless, in the case of municipalities, there be provisions in the charters or ordinances thereof which apply to officers, employees or candidates in such municipalities." The deletion of this phrase — which authorized municipalities to enact provisions in conflict with paragraph104.31(1)(d) with respect to their elected officials and candidates for election to public office — evidences a clear legislative intent to remove the authority of municipalities to regulate the political activities of elected officials or candidates for public office whose political activities are regulated by s. 104.31, F.S. This intent is also manifested in the title to the act, which states, inter alia, that it is an act "amending s. 104.31(1)(d), F.S., to remove the authority of municipalities to regulate certain political activities. . . ." I am of the view that, in this instance, a legislative removal of authority is, for all practical purposes, indistinguishable from a legislative prohibition of the exercise of authority. Accordingly, where — as is the case here — there exists a clear manifestation of a legislative intent that certain power not be exercised by municipalities, which manifestation is accompanied by legislative regulation of the prohibited subject matter, it is my opinion that such legislative action should be construed as an express prohibition or preemption of municipal regulation of the subject matter in question. For the foregoing reasons, I am of the view that the amendment of paragraph 104.31(1)(d) accomplished by Ch. 74-13, supra, should be viewed as an impediment to the exercise of municipal regulation of the political activities of elected municipal officers. AS TO QUESTION 3: I must beg your indulgence and decline to give an opinion on this question. Questions as to the validity of duly enacted legislation under the United States Constitution or under any of its counterparts in the Florida Constitution cannot be passed upon by this office, but are matters for determination solely by the judicial branch of government. However, it might be noted that in the case of City of Miami v. Sterbenz, 203 So.2d 4 (Fla. 1967), the Supreme Court of Florida had before it a charter provision and ordinance remarkably similar to the provisions of s. 9.02(a)(4) of the new City of Largo charter. In that case our highest state court affirmed a trial court decree which they described as follows: The decree found . . . [the charter provision and ordinance] to be "fundamentally in violation of the free speech and related rights guaranteed by theFirst Amendment of the United States Constitution." The first provision, that employees shall not make, solicit or receive contributions for any political purpose, or "be in any manner concerned" with such activity, was held to be invalid for ambiguity, being too broad and vague to be sustained under principles applied to similar provisions in other jurisdictions. We find these conclusions to be well supported by both reason and precedent. Further, the authorities collected in AGO 072-62 show a trend towards judicial invalidation of legislative provisions which sweep too broadly in their efforts to regulate the political activities of public employees. Thus, if s. 9.02(a)(4) of the new City of Largo charter were to be submitted to the Florida courts, the courts might well conclude, as was ruled in Sterbenz, supra, that such provisions are invalid for overbreadth and vagueness.