**CALDWELL et al.**

v.

**CARMAR TRADING CO., Limited.**

Civ. No. 1208.

United States District Court
D. Hawaii.
Nov. 16, 1953.

Anderson, Wrenn & Jenks and Martin Anderson, Honolulu, Hawaii, for plaintiffs.

Levinson & Cobb, William B. Cobb, Tsukiyama & Yamaguchi, Ralph T. Yamaguchi and Samuel P. King, Honolulu, Hawaii, for defendant.

**McLAUGHLIN, Chief Judge.**

This action commenced on September 19, 1952, to recover for wrongful death allegedly caused on February 26, 1951, by the negligence of an employee of the defendant in a collision between the defendant's truck and a jeep in which the decedent was riding on the Island of Saipan, which before World War II was a Japanese possession.

Although all Japanese authority had long ceased as a result of the war, the Civil Law of Japan had been continued by the occupying authorities and was in effect at the time of the accident. That law provided for liability for intentional or negligent injury to another, irrespective of the nature of the injury—whether to person, liberty, reputation or to his property rights. Provisions stating a principle analogous to the doctrine of respondeat superior also existed, as well as a provision for liability for wrongful death to the parents, spouse and children of the deceased: Civil Law of Japan, §§ 709, 710, 711, 715, and 877 (See amended complaint, pg. 2).

On Dec. 22, 1952, following organization of the United Nations Trusteeship of these islands, and subsequent transfer to the administration of the High Commissioner from military and United States Civilian Government control, new laws and regulations were promulgated to supersede the prior laws which had been continued in existence.

Said new laws provided that the applicable laws of the Trust Territory should be the Trusteeship Agreement of the United Nations, the laws of the United States, including Executive Orders of the President which would take effect by their own terms in the Trust Territory, and laws and regulations of the various governmental divisions of the Trust Territory. Trust Territory Code, § 20.

The common law of England and Statutes of Parliament in effect July 3, 1776 as interpreted by American decisions were declared to be included in the law of the Trust Territory except as expressly provided otherwise. Trust Territory Code, § 22. All prior Spanish, German and Japanese laws were repealed, except for certain land laws not concerned here. Trust Territory Code, § 23. However, by the same enactment, the new Trust Territory Government announced in § 25 of the Code its own policy to impose liability for wrongful death, with more specific directions as to the proper parties to the suit, and with a limitation upon the amount of recovery.[1]

---

1. Section 25(a) of the Code of the Trust Territory is as follows:

   *Section 25(a). Liability in action for wrongful death; proceedings.* When the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued, the corporation which, or the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances which make it in law murder in the first or second degree, or manslaughter. When the action is against such administrator or executor the damages recovered shall be a valid claim against the estate of such deceased person. When death is caused by wrongful act, neglect or default in another state, territory or foreign country, for which a right to maintain an action and recover damages in respect thereof is given by a statute of such other state, territory or foreign country, such right of action may be enforced in the Trust Territory. Every such action brought under this Section shall be commenced within the time prescribed for the commencement of such actions by the statute of such other state, territory or foreign country.

It is now contended by the defendant, by means of this motion, that the repeal of the Japanese laws in effect when this cause of action arose abated the cause of action, and the proceedings to enforce any rights thereunder, at whatever stage they are found at the time of repeal.

■ The general common law rule is that if a right of action is founded solely upon a statute, and the statute is repealed before a final judgment is obtained in such a case, the right of action disappears, and with it goes the individual suit which is in the course of trial: 1 Sutherland, Statutory Construction, 1943, p. 524; 82 C.J.S., Statutes, pages 1008, 1009.

The harshness of such a rule—not an uncommon characteristic of the common law—has been recognized by many lawmaking bodies, and remedied by provisions which save existing rights of action either by general laws, or by particular provisions in the repealing act: State ex rel. Osage County etc. Ass'n v. Worten, 1933, 167 Okl. 187, 29 P.2d 1; 82 C.J.S., Statutes, pages 1014–1015; 1 Sutherland, Statutory Construction, 1943, p. 530.

In the absence of such legislative provisions, the common law rule applies in cases of outright repeal, except in cases where the statute was merely declaratory of a common law principle, and in these cases that principle remains as a foundation for continuing the action: Callett v. Alioto, 1930, 210 Cal. 65, 290 P. 438 (1930); 1 Sutherland, Statutory Construction, 1943, p. 525.

In a case such as the one before us, we could not very well expect to find the characteristics or the incidents of the common law of England in effect in a location governed under the principles of the laws of the Emperor of Japan. However, no evidence has been produced to indicate whether the right of action declared by the Civil Law of Japan as cited existed solely by reason of its declaration therein by the administrative authorities, or whether there was such a right, resting upon something analogous to a common law, existing before and merely declared by the codified provisions cited from the Civil Law of Japan. It seems to us that this doubtful point is a material one to this decision, and that the resolution of this doubt was one of the burdens resting upon the movant.

■ While the common law rule as stated above gives a retroactive effect to a repeal, it is not always easy to distinguish between a repeal and an amendment in cases wherein the same policies of an old act are carried forward in a new one. Where an entire act or section is abrogated, and no new section is added to replace it, legislatures label the act producing this result a repeal. However, even if a legislature has labeled an act an amendment, if it in effect has repealed the "amended" act, courts apply the rules applicable to repeals: 1 Sutherland, Statutory Construction, 1943, p. 447. Thus it appears that a court may consider the effect of legislative action in determining the existence of a repeal or an amendment.

In the instant case we do not find the out and out repeal, with nothing more said by the legislating authority. Instead we find a continuation of an existing general policy—in different words, perhaps, and with an apparently more limited remedy—that there be a cause of action for wrongful death. In this interpretation we think the net result of the change in the law to be more like an amendment than like a repeal. Consequently we consider the strict common law rule relative to repeals to be inapplicable here.

■ Another approach to the same point may be helpful. The effect of savings clauses referred to above has been found even where no express clause has been written by the legislature, if an intent to preserve rights theretofore existing sufficiently appears by legislative provision at the session effecting the repeal: 82 C.J.S. Statutes, p. 1016. This intent may be found in the face of a repeal without a savings clause where it appears that there is no departure from the previously declared policy, and no

indication of intent to abolish the right conferred by the old statute, where the former statute is in substance re-enacted at the time of the repeal: State ex rel. Milligan v. Ritter's Estate, 1943, 221 Ind. 456, 48 N.E.2d 993; See Pittsley v. David, 1937, 298 Mass. 552, 11 N.E.2d 461, 464. Contra: Bennet v. Hargus, 1 Neb. 419; Hazzard v. Alexander, 1934, 6 W.W.Harr. 212, 36 Del. 212, 173 A. 517.

▮ Thus it appears that the new government of the Trust Territory, while in form repealing a preexisting provision for recovery for wrongful death, so far recognized the desirability of such a policy in that jurisdiction that it wrote a replacement of its own which substantially continued in force the provisions of the old. We hold that the result of this adjustment was not the same unequivocal expression of intent to abolish an individual's action as would be found at common law in a bald repeal, without more. Rather, we interpret this as an indication of intent that existing rights under the old statute should survive.

For the above reasons the motion is denied.