293 So.2d 48 (1974)
Lance W. McKIBBEN and Peggy S. McKibben, Minors, by and through the Guardian of Their Person and Property, Bryon McKibben, Plaintiffs,
v.
LeRoy T. MALLORY et al., Defendants.
No. 44653.
Supreme Court of Florida.
March 20, 1974.
*49 Edward M. Waller, Jr. of Fowler, White, Gillen, Kinney, Boggs & Villareal, Miami, for plaintiffs.
H. Vance Smith of MacFarlane, Ferguson, Allison & Kelly, Tampa, for defendants.
Robert Orseck of Podhurst, Orseck & Parks, Miami, for amicus curiae, Academy of Florida Trial Lawyers.
ROBERTS, Justice.
We have for consideration questions from the Thirteenth Judicial Circuit in and for Hillsborough County relating to the new wrongful death act, Chapter 72-35, Laws of Florida, designated as Sections 768.16 through 768.27, Florida Statutes, adopted by the Legislature during the 1972 legislative session and its affect on rights of action under previous Sections 768.01, 768.02 and 768.03, Florida Statutes, which were purportedly repealed by Chapter 72-35, Laws of Florida. In view of our recent decision in Kluger v. White, 281 So.2d 1 (Fla. 1973), and there having been no overpowering public necessity for the abolishing of the right to bring actions of wrongful death of persons dying before July 1, 1972, the effective date of Chapter 72-35, Laws of Florida, the trial court found that it was presented with the constitutionality vel non of all or part of Chapter 72-35. The trial court has urged that the questions presented herein are determinative of this cause and are without controlling precedent in this state. We have jurisdiction to answer the certified questions. Florida Appellate Rules, Rule 4.6, 32 F.S.A., Jaworski v. City of Opa-Locka, 149 So.2d 33 (Fla. 1963), Boyer v. City of Orlando, 232 So.2d 169 (Fla. 1970), P.C. Lissenden Co. v. Board of County Commissioners, 116 So.2d 632 (Fla. 1959).
The pertinent facts involved in the instant case as were stated in the Certificate of Questions by the trial court are as follows. Plaintiffs, the minor son and daughter of the decedent, filed an action seeking to recover damages for the alleged wrongful death of Marlin A. McKibben, Jr. on June 6, 1972. The action was originally filed on December 12, 1972, and an Amended Complaint was filed on April 20, 1973. To this Amended Complaint all Defendants filed a Motion to Dismiss on May 31, 1973 on the ground that there is no cause of action for the wrongful death of a person in Florida if the decedent died prior to July 1, 1972. After a hearing held on June 19, 1973 on Defendants' Motion, the trial court, on October 1, 1972, entered an Order Dismissing the Cause with Prejudice. Plaintiffs then filed their timely Motion for Rehearing and, in the Alternative, Motion for Certification of Question. After a hearing held on October 24, 1973, on Plaintiffs' Motion, the trial court, on November 15, 1973, entered an Order Setting Aside Order Dismissing Cause with Prejudice in Order to Certify Questions.
The following questions have been certified to us by the Circuit Court:
(1) Whether the repeal by Chapter 72-35 of Sections 768.01, 768.02 and 768.03 and the restriction of those portions of Chapter 72-35 designated as 768.16 through 768.27 to deaths occurring on and after July 1, 1972, terminated all rights of action for the wrongful deaths *50 of persons dying prior to July 1, 1972 unless said rights of action had been reduced to judgment prior to the effective date of such repeal?
(2) If the answer to the preceding question is in the affirmative, does Article I, Section 21 of the Declaration of Rights of the Florida Constitution, F.S.A., as construed and applied in Kluger v. White render Chapter 72-35 unconstitutional and, if so, in the absence of a severability clause, are all provisions of Chapter 72-35 unconstitutional or only that provision repealing Sections 768.01, 768.02 and 768.03?
(3) If the answer to the first question set forth above is in the negative, which statutory provisions control the determination of the proper party plaintiffs and damages recoverable in an action for wrongful death occurring prior to July 1, 1972?
The problem in the instant cause arises from the Legislature's enactment of a revised wrongful death act (Chapter 72-35; Laws of Florida) in 1972 in an attempt to cure defects in the previous acts, Sections 768.01-768.03, Florida Statutes, which had become evident by studies and decisions of the courts in this state pointing to harsh results effected by the "old" wrongful death acts. In the enactment of Chapter 72-35, designated as Sections 768.16-768.27, Florida Statutes, the Legislature included the following provisions:
"768.27 Effective date.  Sections 768.16 through 768.27 shall take effect on July 1, 1972, and shall not apply to deaths occurring before that date.
"Section 2. Sections 768.01, 768.02, and 768.03, Florida Statutes, are repealed when this Act takes effect."
Since in the cause sub judice plaintiffs' father died prior to July 1, 1972, defendants contend that the result of the "repeal" of Sections 768.01-768.03, Florida Statutes, was to abolish and dissipate any cause of action for wrongful death of any person in Florida when death occurred prior to July 1, 1972, unless the right of action had been reduced to judgment. Plaintiffs contend that the Legislature did not intend to abrogate causes of actions for deaths occurring prior to July 1, 1972, but rather intended that the new act which would constitute a consolidation of wrongful death statutes of Florida into one cohesive scheme, apply to deaths occurring subsequent to the effective date of that act and that the preceding statutes continue to apply to wrongful deaths occurring prior to that date.
The Legislature relative to the concept of wrongful death could not abrogate vested rights of citizens of this state to recover damages for wrongful death without providing an alternative since Florida has had a wrongful death act since 1883 providing for recovery as is sought by plaintiffs sub judice and since the rights under Sections 768.01-768.03, Florida Statutes, F.S.A., accrued on the death of decedent and in view of legislative intent to continue causes of action for wrongful death in this state. This is true under the particular facts of this case relative to wrongful death actions since this Court has held in Florida Power and Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, 918 (1938), relative to a plaintiff's right to assert a cause under Sections 768.01-768.03, Florida Statutes, F.S.A., that,
"This right became vested before her marriage and her subsequent marriage does not so change her status so as to deprive her of this right nor does it make her an adult."
In a compilation of authorities relative to the subject of the retroactive effect of statutes changing the manner and method of distribution of recovery or settlement for wrongful death contained in 66 A.L.R. 2d at 1445, the author found, that,
"The rationale of this rule is that upon a death by wrongful act a right to participate in the damages recovered for the wrongful death vests in the persons entitled to such recovery under the wrongful *51 death statute then in effect, and that they will not be deprived of this vested right by a subsequent amendment of the statute changing the manner or method of distributing the damages recoverable in such an action."
See also: In Re Weaver, 195 Misc. 405, 90 N.Y.S.2d 770 (N.Y. 1949) and In Re Brennan, 160 App.Div. 401, 145 N.Y.S. 440 (N.Y. 1914).
We find in 22 Am.Jur.2d Death, Section 7, page 611, authority for the proposition that,
"Statutes which create a cause of action for wrongful death or which change the rights under an existing death statute are ordinarily not given a retroactive effect unless the legislature has clearly expressed an intention that such effect should be given."
In enacting the present wrongful death statute, the Legislature does not provide that causes of actions accruing under the old statute be obliterated.
Defendants' contention as to the result effected by the new act is untenable in light of the clear legislative intent in adopting Chapter 72-35, Laws of Florida, and in view of the fact that plaintiffs' cause of action for wrongful death vested at the death of their father. Not only would defendants' argument abrogate legislative intent but also such an interpretation would render a portion of the act unconstitutional since such an interpretation would tend to destroy vested rights of action.
It is a fundamental rule of construction that a statute be construed in such a way so as to effectuate legislative intent and that all doubts as to the validity of a statute should be resolved in favor of its constitutionality. City of St. Petersburg v. Siebold, 48 So.2d 291 (Fla. 1950), State ex rel. Shevin v. Metz Construction Co., Inc., 285 So.2d 598 (Fla. 1973), Florida Jai Alai, Inc. v. Lake Howell Water and Reclamation District, 274 So.2d 522 (Fla. 1973), Tornillo v. Miami Herald Publishing Co., 287 So.2d 78 (Fla. 1973). If a statute is susceptible of two constructions one of which will give effect to it and the other which will defeat it, the former construction is preferred. Florida Sugar Distributors v. Wood, 135 Fla. 126, 184 So. 641 (1938). Construction of a statute which would lead to an absurd result should be avoided. City of Miami v. Romfh, 66 Fla. 280, 63 So. 440 (1913), State v. Willis, 124 So.2d 48 (Fla.App. 1960).
It is a fundamental principle that courts will not pass upon the constitutionality of a statute where the case before them may be disposed of upon any other ground. Mounier v. State, 178 So.2d 714 (Fla. 1965), Frazier v. Coleman, 156 Fla. 413, 23 So.2d 477 (1945). In the instant cause, a determination as to constitutionality vel non of the new act is not required. However, this result does not divest us of jurisdiction. P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, supra, De Jong v. Pallotto, 239 So.2d 252 (Fla. 1970), and Mounier v. State, supra.
Sub judice, as evidenced by the report of the Florida Law Revision Commission and the new wrongful death act itself, it clearly was not the legislative intent to abolish and dissipate causes of action accruing prior to July 1, 1972, because death occurred prior thereto. Although the new act expressly repeals the old act as of July 1, 1972, it does not purport to apply retrospectively and no provision is made therein that causes of actions accruing under the old statute be obliterated. The Legislature has declared no express intention that the statute be given retroactive effect. See Trustees of Tufts College v. Triple R. Ranch, etc., 275 So.2d 521 (Fla. 1973). In a decision by the Supreme Court of Arkansas in Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958), relative to a repeal of a comparative negligence statute and enactment of a new act with respect to comparative negligence, that court explicated *52 that in determining legislative intent it is presumed that legislation is intended to act only prospectively and all statutes are to be construed as having a prospective operation unless the purpose and intention of the Legislature to give them retroactive effect is expressly declared or necessarily implied. Therein, the Arkansas court quoted the following excerpt from 50 Am.Jur., Statutes, Sec. 533,
"The prevailing view, however, is that where a statute is repealed and all, or some, of its provisions are at the same time re-enacted, the re-enactment is considered a reaffirmance of the old law, and a neutralization of the repeal, so that the provisions of the repealed act which are thus re-enacted continue in force without interruption, and all rights and liabilities incurred thereunder are preserved and may be enforced."
and then stated,
"The majority rule is similarly expressed in 82 C.J.S. Statutes § 435, as follows: `The repeal of a statute does not operate to impair or otherwise affect rights which have been vested or accrued while the statute was in force. This rule is applicable alike to rights acquired under contracts and to rights of action to recover damages for torts. Where a new statute continues in force provisions of an old statute, although in form it repeals them at the moment of its passage, a right of action created by the old statute is not thereby destroyed.
"Where, however, the statute is regarded not as creating a right, but only as providing a remedy where none existed at common law, its repeal has the effect of taking away the remedy for acts or omissions occurring while the statute was still in force. * * *
"Even where no question of vested rights is involved, the presumption is that repeal of a statute does not invalidate the accrued results of its operative tenure, and it will not be thus retroactively construed as undoing accrued results if not clearly required by the language of the repealing act.'
* * * * * *
"Even if the valuable right accruing to appellee under the 1955 Act did not rise to the dignity of a vested one, as appellant so earnestly contends, its repeal did not thereby destroy the accrued results of its operative tenure. As the New Hampshire court stated in the case of In re Opinion of the Justices, supra [89 N.H. 563, 198 A. 249]: `The repeal of a statute renders it thenceforth inoperative, but it does not undo or set aside the consequences of its operation while in force, unless such a result is directed by express language or necessary implication. A status established in a manner which becomes proscribed is not lost by the mere fact of the proscription.
`Even, as here, where no question of vested rights is involved, the presumption is that the repeal of an act does not invalidate the accrued results of its operative tenure. To undo such results by a repeal is to give it retroactivity, and based upon elemental principles of justice a rule of construction avoids that effect if the language of the repeal does not clearly require it.'" Chism, supra, at 299-301.
We have held that in construing a statute, we will consider its history, evil to be corrected, and the purpose intended by the Legislature. Difficulty has often arisen in determining legislative intent in enacting repealing statutes and the effect to be given to them relative to rights which have accrued thereunder. It is said that whether a statute has been repealed is a judicial question and where a new statute re-enacts an old one, a declaration that the old statute is repealed is a legislative opinion on a judicial question. 77 A.L.R.2d 340. The extent to which existing legislation is repealed by subsequent statutes is a question of legislative intent. 1 Sutherland, Statutory Construction 3rd 454. An *53 authoritative discussion of the effect of repeal and re-enactment by the legislature of statutory remedies is contained in Crawford, Statutory Construction, Sec. 322. Relying, inter alia, on this Court's decision in Forbes v. Board of Health, 27 Fla. 189, 9 So. 446 (Fla. 1891), the author of this treatise explains:
"Often the legislature instead of simply amending a pre-existing statute, will repeal the old statute in its entirety and by the same enactment re-enact all or certain portions of the pre-existing law. Of course, the problem created by this sort of legislative action involves mainly the effect of the repeal upon rights and liabilities which accrued under the original statute. Are those rights and liabilities destroyed or preserved? The authorities are divided as to the effect of simultaneous repeals and re-enactments. Some adhere to the view that the rights and liabilities accruing under the repealed act are destroyed, since the statute from which they sprung has actually terminated, even though for only a very short period of time. Others, and they seem to be in the majority, refuse to accept this view of the situation, and consequently maintain that all rights and liabilities which have accrued under the original statute are preserved and may be enforced, since the re-enactment neutralizes the repeal, thereby continuing the law in force without interruption. Logically, the former attitude is correct, for the old statute does cease to exist as an independent enactment, but all practical considerations favor the majority view. This is so even where the statute involved is a penal act." (emphasis supplied)
We adhere to our early pronouncement in Forbes v. Board of Health, supra, wherein this Court explicated that where a statute has been repealed and substantially re-enacted by a statute which contains additions to or changes in the original statute, the re-enacted provisions are deemed to have been in operation continuously from the original enactment whereas the additions or changes are treated as amendments effective from the time the new statute goes into effect. See also Florida Central P.R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338 (1899) wherein this Court held a wrongful death act was not interrupted in its operation by a repealing act which substantially enacts provisions of the original act.
In Caldwell v. Carmar Trading Co., 116 F. Supp. 546 (U.S.D.C.Hawaii, 1953), a case strikingly similar to the cause sub judice, the court held that the legislative intent to preserve rights theretofore existing may be found in the face of a repeal without a savings clause where it appears that there is no departure from previously declared policy that there be a cause of action for wrongful death, and no indication of an intent to abolish rights conferred by a previous statute, and statute is in substance re-enacted at time of repeal. The action for wrongful death in Caldwell v. Carmar Trading Co., supra, was commenced on September 19, 1952, to recover for wrongful death caused on February 26, 1951. On December 22, 1952, the wrongful death action under which plaintiff's cause of action had accrued was repealed. However, by the same enactment, the new Trust Territory Government announced its own policy to impose liability for wrongful death with more specific directions as to the proper parties to the suit and limitation on recovery. The defendant in Caldwell raised the identical contention as raised by the defendants in the instant cause that the repeal of the preceding wrongful act had the effect of abating causes of actions arising thereunder. In response to this contention, the court in Caldwell, supra, explicitly held, as follows:
"While the common law rule as stated above gives a retroactive effect to a repeal, it is not always easy to distinguish between a repeal and an amendment in cases wherein the same policies of an old act are carried forward in a new one. *54 Where an entire act or section is abrogated, and no new section is added to replace it, legislatures label the act producing this result a repeal. However, even if a legislature has labeled an act an amendment, if it in effect has repealed the `amended' act, courts apply the rules applicable to repeals: 1 Sutherland, Statutory Construction, 1943, p. 447. Thus it appears that a court may consider the effect of legislative action in determining the existence of a repeal of an amendment.
"In the instant case we do not find the out and out repeal, with nothing more said by the legislating authority. Instead we find a continuation of an existing general policy  in different words, perhaps, and with an apparently more limited remedy  that there be a cause of action for wrongful death. In this interpretation we think the net result of the change in the law to be more like an amendment than like a repeal. Consequently we consider the strict common law rule relative to repeals to be inapplicable here.
* * * * * *
"We hold that the result of this adjustment was not the same unequivocal expression of intent to abolish an individual's action as would be found at common law in a bald repeal, without more. Rather, we interpret this as an indication of intent that existing rights under the old statute should survive."
See also: Chism v. Phelps, supra; Haddock v. Florida Motor Lines Corp., 150 Fla. 848, 9 So.2d 98 (1942); 77 A.L.R. 1338; Shinners v. Royal Coal and Mining Co., 188 Ill. App. 335 (1914); Dance v. Martelli, 16 Ill. App.2d 122, 147 N.E.2d 385 (1958).
As expressed by the Legislature of Florida in Chapter 72-35, Laws of Florida, Section 768.17, the legislative intent in adopting these provisions is, as follows:
"It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16 through 768.27 are remedial and shall be liberally construed."
Construing the earlier wrongful death statutes, Section 768.01-768.03, Florida Statutes, F.S.A., this Court in Garner v. Ward, 251 So.2d 252 (Fla. 1971), declared that the statutory language makes clear the purpose of the act is to protect the family and dependents of an individual in the event of wrongful death. The public policy that there be a cause of action for wrongful death continues to exist as is clearly shown by the enactment of Chapter 72-35, Laws of Florida.
The intent and purpose of the Legislature in effecting changes to the previous wrongful death acts was to correct the harsh results and inequities which often times were wrought by the old act as commented on by the appellate courts of this state in Garner v. Ward, 251 So.2d 252 (Fla. 1971); Ellis v. Brown, 77 So.2d 845 (Fla. 1955); Fussell v. Douberly, 206 So.2d 231 (Fla.App. 1968); Holland v. Hall, 145 So.2d 552 (Fla.App. 1962); Randolph v. Clack, 113 So.2d 270 (Fla.App. 1959). These courts suggested the need for remedial legislation in the area of wrongful death. The purpose of the Legislature in enacting Chapter 72-35, Laws of Florida, was to consolidate the wrongful death statutes of Florida into one cohesive scheme wherein an action will be brought by the personal representative of a decedent on behalf of the survivors and the estate.
Relative to the intent of the Legislature in effecting an amendment to Florida'a Wrongful Death Act, the Florida Law Revision Commission in its published "Recommendations and Report on Florida Wrongful Death Statutes" explained the need for revisions of these statutes, as follows:
"Wrongful deaths acts throughout the United States are in a state of disarray. Florida's is no exception. Some of the *55 results that are possible under the wrongful death legislation of Florida can only be fairly described as deplorable. The Florida courts have increasingly called attention to these defects, and some of the recent judicial calls for legislative help have had a plaintive and desperate quality.
* * * * * *
"There are several things wrong with the wrongful death situation in Florida, but suffice it to say here that Florida's current position seems to be to minimize recoveries when there are many dependents left by the deceased and to maximize recoveries when no one is left dependent on the deceased. It takes no expert in the law to realize that this policy is diametrically opposed to what one would expect to be the objective in this area. Further, dependents of the deceased sometimes most deserving and needful of support are occasionally left without any recovery at all. As if these horribles were not enough, the present state of our law encourages a multiplicity of litigation and a great deal of uncertainty about the damages recoverable.
* * * * * *
"Grave difficulties were created by the unique departure from the usual Lord Campbell provisions in F.S. § 768.02, F.S.A. The strict hierarchy of beneficiary classes created by this enactment, in the final analysis, must be recognized as the most serious defect. Florida's death acts have caused so much injustice and confusion that the Supreme Court has been prompted to request legislative revision. The ideal death act should require the tortfeasor to respond in one civil action for the actual losses of those living dependents of the deceased. The wrongful death laws of Florida do not achieve this ideal. Further, a great deal of unfairness is possible in Florida to both dependents of the deceased and the tortfeasor."
The evident legislative intent in enacting Chapter 72-35, Laws of Florida, was not to abrogate existing claims accruing under the pre-existing wrongful death statutes but rather was to amend and to cure the defects of this act as had been found to exist by the courts of this state and by application. The Legislature by repealing the former wrongful death act replaced the old act with the new act as to only causes of actions accruing after July 1, 1972. Section 768.27, Florida Statutes, F.S.A. The "old" wrongful death statutes govern wrongful deaths occurring prior to July 1, 1972.
In summary, our view is that when the new wrongful death act adopted by the 1972 Legislature, effective July 1, 1972, became effective, it provided a new and improved method of obtaining damages for the tortious destruction of a human life. The incidental repeal of the old law was not intended to nor did it have the effect of destroying the rights of persons for wrongful death under the old law. We, therefore, hold in answer to the certified questions that the "repeal" by Chapter 72-35 of Sections 768.01, 768.02, and 768.03, and the restriction of Chapter 72-35 to deaths occurring on and after July 1, 1972, did not terminate all rights of action for wrongful deaths of persons dying prior to July 1, 1972. The first question is, therefore, answered in the negative. In view of the foregoing disposition of this cause, we do not reach the second question. As above stated, in response to the third question, the "old" wrongful death act governs wrongful deaths occurring prior to July 1, 1972.
It is so ordered.
ADKINS, C.J., and ERVIN, McCAIN and DEKLE, JJ., and McCORD, District Court Judge, concur.