QUESTION: May a petition for the involuntary treatment of a person who refuses to be examined by a licensed physician for alcoholism under s. 396.102, F.S. (1974 Supp.), be submitted to, and considered by, the circuit court?
SUMMARY: Under s. 396.102, F.S. (1974 Supp.), providing for the involuntary treatment of alcoholics, the refusal of a person to be examined by a physician does not prevent proper parties from submitting a petition for the involuntary treatment of that person, nor does such refusal prevent the circuit court from considering and acting upon the petition. Your request arises from what appears to be a conflict between subsections (1) and (3) of s. 396.102, F.S. (1974 Supp.), in which is provided a procedure whereby a person suffering from alcoholism to such a degree as to meet statutory requirements regarding loss of self control, inability to make a judgment as to the need for treatment, etc., may by order of the circuit court be involuntarily treated. Such involuntary treatment is to be undertaken pursuant to the submission by statutorily designated parties of a petition urging such treatment, which petition is then considered by the circuit court. Regarding the petition, s. 396.102(1) provides: The petition shall be accompanied by a certificate of a licensed physician who has examined the person within 2 days of the submission of the petition. The certificate shall set forth the physician's findings in support of the allegation of the petition. If the person whose commitment is sought has refused to submit to an evaluation, the fact of such refusal shall be alleged in the petition. (Emphasis supplied.) Your concern is whether the above language, which states that the petition "shall be accompanied by a certificate of a licensed physician," prevents the submission to, and consideration by, the circuit court of the petition for involuntary treatment of one who has refused to be examined. First, I would point out the last sentence of subsection (1), supra, which provides that "refusal shall be alleged in the petition." If submission to a medical examination were an absolute prerequisite to the submission of the petition, then the above language would be meaningless. If refusal of an examination precluded submission of the petition, there would be no reason to allege such refusal in the petition. In addition, subsection (3) of s. 396.102, supra, clearly contemplates the consideration by a circuit court of a petition for the involuntary treatment of one who has refused to be examined. In this regard, s. 396.102(3) provides, in pertinent part:
If the person whose commitment is sought has refused to be examined by a physician, he shall be afforded an opportunity to consent to examination by a court-appointed physician. If he refuses and there is sufficient evidence to believe that the allegations of the petition are likely to be true, or, in any case, if the court believes that more evidence is necessary, the court may make a preliminary order committing the person to an appropriate treatment resource for a period of not more than 5 days for purposes of further evaluation. If after hearing all relevant evidence, including the results of any case findings, the court finds that the grounds for involuntary commitment have been met by clear and convincing proof, the court shall make a final order stating its findings and ordering the person to treatment at or through a treatment resource deemed appropriate by the court. Under the above provision, as well as the last sentence of s. 396.102(1), supra, it would appear that the absence of a certificate from a physician would not prevent the petitioners from submitting, or the circuit court from considering and acting upon, a petition for involuntary treatment. However, since there is some ambiguity or conflict within s. 396.102, it is appropriate to consider applicable rules of statutory construction. One well-established rule applicable here is that statutes are to be construed as a whole, with individual provisions considered in the context of the overall statute. In Ozark Corporation v. Pattishall, 185 So. 333, 337 (Fla. 1938), the court stated: "In construing a statute effect must be given to every part, if it be reasonably possible to do so. Each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." And in Forehand v. Manly,2 So.2d 864, 867 (Fla. 1941), the court stated: "One of the cardinal rules adopted by the Court is the legislative intent as gleaned from a consideration of the entire enactment." (Emphasis supplied.) Accord: Wilensky v. Fields, 267 So.2d 1 (Fla. 1972); State v. Hayles, 240 So.2d 1 (Fla. 1970). Another basic rule of statutory construction applicable here is that legislative intent is the controlling factor, and that no strictly literal interpretation should be made if such an interpretation is in contravention of the obvious intent of the Legislature. In State v. Sullivan,116 So. 255, 261 (Fla. 1928), the court stated: In statutory construction legislative intent is the pole star by which we must be guided, and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well settled canons of construction. The primary purpose designated should determine the force and effect of the words used in the act, and no literal interpretation should be given that lends to an unreasonable or ridiculous conclusion or a purpose not designed by the lawmakers. Accord: Ozark Corporation v. Pattishall; supra; Adams v. Gordon, 260 So.2d 246 (4 D.C.A. Fla., 1972); Deltona Corporation v. Florida Public Service Com'n, 220 So.2d 905 (Fla. 1969); Florida Jai Alai, Inc. v. Lake Howell Water R. Dist.,274 So.2d 522 (Fla. 1973). In a similar vein, the court in Smith v. City of St. Petersburg, 302 So.2d 756, 757 (Fla. 1974), stated: A statute is to be construed in such manner as to ascertain and give effect to the evident interpretation of the Legislature as set forth in the statute, and where any ambiguity in the meaning or context of a statute exists, this must yield to the legislative purpose. Accord: McKibben v. Mallory, 293 So.2d 48 (Fla. 1974). In Orlando Sports Stadium, Inc. v. State ex rel. Powell,262 So.2d 881, 885 (Fla. 1972), the court observed that "[t]he statutory scheme should be construed in light of the evil to be remedied and the remedy conceived by the Legislature to cure that evil." In the instant matter, the evil to be cured is that of alcoholism, particularly that alcoholism which renders a person unable to voluntarily seek help; and the remedy conceived by the Legislature is the procedure in s. 396.102, supra, for involuntary treatment under limited circumstances and pursuant to court order. To allow an alcoholic to defeat the statutory procedure simply by refusing to be examined by a physician would render the statute virtually meaningless and would disregard the clear legislative intent. The very fact that an alcoholic is to be treated under the involuntary procedure — rather than the voluntary procedure — in itself indicates a strong likelihood that he or she will refuse to be examined. If the alcoholic were willing to cooperate in the effort, there would be no need for an involuntary treatment procedure. The propriety of adopting that interpretation which allows the statute to operate and which avoids an absurd result has been well established by Florida courts. In McKibben v. Mallory, supra, at 51, the court stated: If a statute is susceptible of two constructions one of which will give effect to it and the other which will defeat it, the former construction is preferred. [Cite omitted.] Construction of a statute which would lead to an absurd result should be avoided. Accord: Leach v. State, 293 So.2d 77 (1 D.C.A. Fla., 1974); Miller v. State,297 So.2d 36 (1 D.C.A. Fla., 1974). I am not unmindful of the serious nature of a statute such as s. 396.102, supra, in its provision for involuntary treatment. However, it is clear that the Legislature also appreciated the gravity of the procedure it was creating, and thus provided, in s. 396.151, F.S., penalties for those who might provide false information in order to have a person involuntarily treated or who might petition for involuntary treatment without probable cause therefor. In addition, the Legislature specifically provided that a person being involuntarily treated under s. 396.102 may seek discharge from the treating facility "at any time" through a writ of habeas corpus. Section 396.102(10), F.S. (1974 Supp.). Thus, I am of the opinion that the refusal of a person to be examined by a physician does not prevent the submission by proper parties of a petition for involuntary treatment of that person for alcoholism, under s. 396.102, F.S. (1974 Supp.), nor does it prevent the circuit court from considering and acting upon such a petition in which refusal to be examined is alleged. Your question is answered in the affirmative.