Mr. Joseph P. Cresse Chairman, Public Service Commission
QUESTION:
For purposes of computing the regulatory assessment fee due to be paid to the Public Service Commission by certain utilities for the period January 1, 1980, to June 30, 1980, does the fee base of gross operating revenues for that period include sales for resale between such utilities?
SUMMARY:
Regulatory fees for the period of January 1, 1980, through June 30, 1980, accrued under the provisions of s. 350.78, F.S. 1979, notwithstanding that they were not required to be paid until 30 days later, when s. 3, ch. 76-168, Laws of Florida, purported to repeal s. 350.78. As permitted by s. 7, ch. 76-168, the provisions of ch. 80-289, Laws of Florida, had the effect of reestablishing the provisions of s. 350.78, so that fees which had accrued thereunder could be thereafter collected as well. Since the liabilities accrued under s. 350.78, F.S. 1979, their computation is governed by the terms of that statute, and not by those of ch. 80-289, Laws of Florida.
It is my opinion that this question is appropriately answered in the affirmative.
The answer to your question is controlled by the consideration of two statutes. Since July 1, 1980, a regulatory assessment fee has been imposed on each public utility as defined in s. 366.02, F.S., under the Public Service Commission's jurisdiction, and each municipal electric utility and rural electric cooperative (see s.350.113(7), F.S.) by s. 350.113(3)(c), (d), F.S. (1980 Supp.). Those subsections read as follows:
 (3) Each regulated company under the jurisdiction of the commission, which company was in operation for the preceding 6-month period, shall pay to the commission within 30 days following the end of each 6-month period, commencing June 30, 1977, a fee based upon the gross operating revenues for such period subject to the limitations of this subsection. The fees shall, to the extent practicable, be related to the cost of regulating such type of regulated company and shall in no event be greater than:
 (c) For each public utility as defined in s. 366.02, one-eighth of 1 percent of its gross operating revenues derived from intrastate business, excluding sales for resale between public utilities, municipal electric utilities, and rural electric cooperatives, or any combination thereof.
 (d) For each municipal electric utility and rural electric cooperative, one sixty-fourth of 1 percent of its gross operating revenues derived from intrastate business, excluding sales for resale between public utilities, municipal electric utilities, and rural electric cooperatives, or any combination thereof.
This statute was created by ch. 80-289, Laws of Florida, and had as its effective date July 1, 1980. Sections 3 and 7, ch. 80-289, Laws of Florida.
Prior to July 1, 1980, a similar regulatory fee was imposed on electric and gas utilities under s. 350.78(3), F.S., 1979. That statute did not mention or provide for the imposition of any regulatory fees on municipal electric utilities and rural electric cooperatives, and most significantly, it did not exclude sales for resale between the regulated utilities from `gross operating revenues.' Section 350.78, supra, was initially scheduled for repeal effective July 1, 1980, by the Regulatory Reform Act of 1976. Section 3(2)(j), ch. 76-168, Laws of Florida, as amended by ch. 77-457.
Basically, your question is which of the above provisions applies to the gross operating revenues earned between January 1, 1980, and June 30, 1980, by the electric and gas utilities designated in s. 350.78(3), F.S., 1979. By the clear wording of the statute, on all fees which fall due under the provisions of ch. 80-289, Laws of Florida, sales for resale between the designated utilities are excluded from gross operating revenues. There is nothing in ch. 80-289, which gives this exclusion from gross operating revenues a different effective date than the provisions imposing the fee. Moreover, there is nothing which even implies that the measure of `intrastate gross operating revenues' contained in s. 350.78, F.S., 1979, applies to the regulatory fee imposed under ch. 80-289, on any kind of a `transitional' basis. Therefore, as to new provisions, ch. 80-289, absent evidence of retroactive intent, operates prospectively under settled rules of statutory construction. In short, if a fee is to be imposed under the authority of and as prescribed by ch. 80-289, the base for the fee must also be measured under ch. 80-289.
However, I do not feel that a fee can be charged against the gross receipts which accrued from January 1, 1980, to June 30, 1980, under the authority of or as prescribed by ch. 80-289, Laws of Florida. There is some question as to the ability of the legislature to measure a regulatory fee by receipts from periods which precede the imposition statute becoming law. Cf. State exrel. Jacksonville Gas Co. v. Lee, 112 Fla. 109, 150 So. 225
(1933). It does not appear that the Legislature intended ch. 80-289 to have any retroactive effect. In fact, s. 7, ch. 80-289 specifically limits any retroactive effect to July 1, 1980, but, for another purpose or objective. Although subsection (3) of s.350.113, F.S., as created thereby does speak to the fee commencing June 30, 1977, this language appears to have been lifted from s. 350.78, F.S., 1979, with no intention to duplicate fees which had already been assessed or accrued under s. 350.78.
Moreover, it is my opinion that fees measured by gross operating revenues received between January 1, 1980, and June 30, 1980, can be imposed under the authority of s. 350.78, F.S., 1979, notwithstanding the fact that those fees were not required to be paid thereunder until July 31, 1980, and s. 350.78, was purportedly repealed effective July 1, 1980, as noted above. Subsection 7 of ch. 76-168, Laws of Florida, permits the Legislature to reestablish any program or function which was terminated under subsection 3. The provisions of ch. 80-289, Laws of Florida, discussed herein constitute such a reestablishment of the regulatory fee provisions contained previously in s. 350.78, F.S., 1979, to the extent that they were not amended in the later act. Specifically, the collection provisions in s. 350.78, are essentially the same as those found in the ch. 80-289 reestablishment. The Florida courts recognize that the reenactment of a statutory provision, even though with amendments, simultaneously with the date of repeal of a previous statute carries forward rights and liabilities incurred under the old law. Thus, in the case of McKibben v. Mallory, 293 So.2d 48, 52 (Fla. 1974), the Florida Supreme Court quoted the following language with approval:
 The prevailing view, however, is that where a statute is repealed and all, or some, of its provisions are at the same time re-enacted, the re-enactment is considered a reaffirmance of the old law, and a neutralization of the repeal, so that the provisions of the repealed act which are thus reenacted continue in force without interruption, and all rights and liabilities incurred thereunder are preserved and may be enforced.
See also Goldenberg v. Dome Condominium Ass'n., 376 So.2d 37 (3 D.C.A. Fla., 1979).
In the situation about which you inquire, fees accrued under s. 350.78, supra, between January 1, 1980, and June 30, 1980, by reason of a regulated company operating under the regulatory jurisdiction of the Commission during that period, notwithstanding that those fees were not actually required to be remitted until 30 days later, when the statute purportedly stood repealed. Under the principal of statutory construction noted above, the re-enactment of the same basic remission and collective provisions in ch. 80-289, Laws of Florida, had the effect of reaffirming those provisions contained in s. 350.78, F.S., 1979, for purposes of requiring payment, and authorizing collection, of those fees which had accrued under that act. Where the fees in question accrued under the provisions of s. 350.78, F.S., 1979, the measure of gross operating revenues would also be governed by that statute and would not include the exclusion of sales for resale between the designated utilities from the gross operating revenues thereof.
Prepared by: E. Wilson Crump, II, Assistant Attorney General