NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PATRICK GAMMAGE,                          )
                                          )
          Appellant,                      )
                                          )
v.                                        )          Case No. 2D18-2954
                                          )
STATE OF FLORIDA,                         )
                                          )
          Appellee.                       )
                                          )
_____ )

Opinion filed August 2, 2019.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
DeSoto County; Don T. Hall, Judge.

Robert David Malove of Law Office of
Robert David Malove, P.A., Fort
Lauderdale, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Kelly O'Neill, Assistant
Attorney General, Tampa, for Appellee.


VILLANTI, Judge.

          Patrick Gammage appeals the summary denial of his motion for

postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850.  In that

motion, Gammage raised a single claim, contending that his convictions for three counts

of attempted tampering with jurors violate double jeopardy.  Because all of the actions

at issue here occurred during a single criminal episode and did not constitute distinct acts, only one conviction was proper. Therefore, we reverse two of Gammage's three convictions and remand for the postconviction court to resentence Gammage using a corrected scoresheet.

The background facts, as reflected in both the record and this court's opinion of December 30, 2015, establish that Gammage was charged with several drug offenses that were set for trial on October 23, 2013. On that date, Gammage gave his girlfriend and another friend a stack of flyers to hand out to prospective jurors as they were arriving at the DeSoto County courthouse in Arcadia for jury duty.[1] The flyers contained an Internet article about a confidential informant who had recently admitted to lying and planting evidence to help law enforcement make arrests in DeSoto County. While this particular confidential informant was not testifying against Gammage and played no role in his case, another confidential informant was involved in Gammage's case. Gammage specifically told his girlfriend that the purpose of handing out the flyers was to influence prospective jurors concerning the credibility of testimony from any confidential informant. Gammage's girlfriend handed out three flyers to three separate prospective jurors during a period of about twenty minutes. She stopped at that point because the time had passed for Gammage's trial to start. Apparently, the other friend did not hand out any flyers.

An off-duty police officer observed this conduct and obtained one of the flyers from one of the prospective jurors. The officer then notified a bailiff, who in turn

---

[1]The jury for Gammage's drug trial had not yet been selected as of the morning of October 23. Gammage's case was scheduled for that day as what is colloquially known as a "pick and go."

notified the trial court. Gammage's trial on the drug charges was continued, and the State filed three new charges against Gammage for tampering with jurors in violation of section 918.12, Florida Statutes (2013).

At Gammage's trial on the tampering charges, the evidence showed that three prospective jurors were approached in the parking lot and on the sidewalks leading up to the courthouse all within approximately twenty minutes of each other. Once the time for prospective jurors to arrive at the courthouse had passed, Gammage's girlfriend stopped attempting to hand out flyers. And after Gammage's drug trial was continued, she did not attempt to hand out flyers again, whether after a lunch break or on another day. Based on this evidence, the jury convicted Gammage of all three counts of tampering with jurors, and he was sentenced to three consecutive terms of five years in prison.

On direct appeal, this court determined that convictions for the completed offense were improper. Therefore, we reversed the convictions and remanded for entry of convictions for attempted tampering with jurors. See Gammage v. State, 181 So. 3d 1256 (Fla. 2d DCA 2015). Gammage did not raise the double jeopardy issue in that appeal.

On remand, the trial court entered an amended judgment and resentenced Gammage to the same sentences he had received previously. Gammage appealed his new sentences, and this court affirmed without opinion. See Gammage v. State, 231 So. 3d 1255 (Fla. 2d DCA 2017) (table decision). Gammage did not raise the double jeopardy issue in that appeal either.

Gammage then filed a timely rule 3.850 motion, raising as his sole issue the argument that his three convictions for attempted tampering with jurors violated double jeopardy because, under the "a/any" test, the statute was ambiguous and so only one conviction was permitted for all tampering that occurred in a single criminal episode. See Grappin v. State, 450 So. 2d 480, 482 (Fla. 1984) (explaining the "a/any" test and noting that a statute that criminalizes the act of taking "any firearm" is ambiguous such that only one prosecution will be permitted for all firearms taken in a single episode). The State filed a response arguing that even if the "a/any" test limited the number of prosecutions for all tampering in a single episode, Gammage's convictions should be affirmed because his girlfriend's approach to each prospective juror should be considered a separate criminal episode. The postconviction court agreed with the State and summarily denied the motion. Gammage now appeals this ruling.

As an initial matter, it is settled law that a claim that a defendant's convictions violate double jeopardy may be raised under rule 3.850, even when the defendant could have raised the issue in a direct appeal from his judgment and sentence. See Plowman v. State, 586 So. 2d 454, 455 (Fla. 2d DCA 1991) (citing State v. Johnson, 483 So. 2d 420, 422 (Fla. 1986)); see also Gardner v. State, 30 So. 3d 629, 630 (Fla. 2d DCA 2010), disapproved of on other grounds by Dunbar v. State, 89 So. 3d 901, 905-07 (Fla. 2012). Hence, despite the fact that Gammage filed two earlier appeals in which he could have raised the double jeopardy issue he now raises, the issue is not procedurally barred and so was properly considered on its merits by the postconviction court.

- 4 -

Turning to those merits, the question before this court is whether Gammage's three convictions for attempted tampering with jurors violate double jeopardy. To properly address this question, we must first determine, if possible, the legislature's intent under the language of section 918.12. If the statutory language clearly shows that the legislature intended to permit a separate prosecution for the tampering with each individual juror, then Gammage's three convictions should be affirmed. If, however, the statutory language is too ambiguous to permit a determination of legislative intent, the rule of lenity would require that approaches to multiple jurors in a single criminal episode be punished only once. And if that is the case, we must next determine whether Gammage's girlfriend's acts occurred during a single criminal episode. If so, we must then determine whether her acts constituted "distinct acts" during the course of that single episode. If the convictions all arose during a single criminal episode and if they are not predicated on distinct acts, two of Gammage's three convictions must be reversed. See, e.g., Partch v. State, 43 So. 3d 758, 760 (Fla. 1st DCA 2010) ("[I]n order to determine if appellant's convictions violate double jeopardy, we must first ascertain if the charges were based on an act or acts which occurred within the same criminal transaction and/or episode. If the charge did occur during the same transaction or episode, we must then determine if the convictions were predicated on distinct acts.").

**1.        Unit of Prosecution**

As mentioned above, our first task is to determine whether the language of section 918.12 allows us to determine the applicable unit of prosecution intended by the legislature.  Essentially, we must try to determine whether the legislature intended for a defendant to be separately prosecuted for tampering with each individual juror or whether tampering with any juror—whether it be one or more—constitutes the completed offense such that only one offense occurs whether the defendant tampers with, e.g., one, two, five, or ten individual jurors in a single episode.

The parties focused their arguments on this issue on the "a/any" test first set out in Grappin.  This court has explained the "a/any" test as follows:

> "When the article 'a' is used by the [l]egislature in the text of the statute, the intent of the [l]egislature is clear that each discrete act constitutes an allowable unit of prosecution." McKnight [v. State], 906 So. 2d [368] at 371 [(Fla. 5th DCA 2005)].  On the other hand, "[u]se of the adjective 'any' indicates an ambiguity that may require application of the rule of lenity." Id. at 372.

Edwards v. State, 268 So. 3d 849, 852 (Fla. 2d DCA 2019) (alterations in original).  However, the "a/any" test is not a definitive test in and of itself.  Instead, as the supreme court has explained:

> Our purpose in construing a statutory provision is to give effect to legislative intent.  Legislative intent is the polestar that guides a court's statutory construction analysis. State v. J.M., 824 So. 2d 105, 109 (Fla. 2002).  In attempting to discern legislative intent, we first look to the actual language used in the statute.  Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000).  If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent. Id.; Weber v. Dobbins, 616 So. 2d 956, 958 (Fla. 1993).  "To discern legislative intent, courts must consider the statute as a whole, including the evil to be corrected, the language, title,

and history of its enactment, and the state of law already in existence on the statute." State v. Anderson, 764 So. 2d 848, 849 (Fla. 3d DCA 2000) (citing McKibben v. Mallory, 293 So. 2d 48, 52 (Fla. 1974)).

Bautista v. State, 863 So. 2d 1180, 1185-86 (Fla. 2003). Hence, the "a/any" test is simply one "valid linguistic tool that is helpful in establishing the Legislature's intended unit of prosecution." Id. at 1188. Ultimately, the court must consider the "a/any" test together with the other rules of statutory construction, and if it nevertheless cannot determine the meaning of the statute from its wording or legislative history, then the statute must be construed in favor of the defendant. Id. at 1185 (citing Wallace v. State, 724 So. 2d 1176 (Fla. 1998), and Ladner v. United States, 358 U.S. 169 (1958)). And in the case of multiple convictions under the same statute, construing the statute in favor of the defendant means that only one conviction can stand. "If there is ambiguity [in the language of the statute], . . . the rule of lenity applies to resolve the ambiguity against turning a single transaction into multiple offenses." Id. at 1183.

In this case, looking first at the language of the statute, it provides:

918.12—**Tampering with jurors.** Any person who influences the judgment or decision of <u>any grand or petit juror</u> on any matter, question, cause, or proceeding which may be pending, or which may by law be brought, before <u>him or her as such juror</u>, with intent to obstruct the administration of justice, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 918.12 (emphasis added.) Under the "a/any" test as set out by Grappin and explained in Bautista and Wallace, because the statute refers to influencing the judgment of "any . . . juror," the statute is ambiguous, and this ambiguity must be resolved in favor of the defendant. Therefore, applying the "a/any" test to the statutory

language at issue here, Gammage could be prosecuted only once regardless of the number of jurors with whom he attempted to tamper during a single criminal episode.

In its brief in this appeal, the State contends that the subsequent language in the statute referring to a case pending "before him or her as such juror" clarifies the legislature's intent and demonstrates that the legislature intended that tampering with each individual juror constitute a separate offense. However, as Gammage points out in his reply brief, the title of the statute is "tampering with juror**s**." Had the legislature intended to permit a prosecution for each individual juror, it would have titled the offense "tampering with a juror." These discrepancies in the language throughout this relatively short statute tend only to muddy the underlying intent. The statute's title referring to "jurors" and its language regarding influencing "any juror" logically seem to indicate that only one prosecution is permissible regardless of the number of jurors involved, while the language regarding a case pending before "him or her as such juror" conversely seems to indicate that the State may separately prosecute a defendant for each individual juror with whom he has tampered. Because the statutory language raises more questions than it answers about what the legislature actually intended, the rule of lenity requires this court to interpret the statute in a manner most beneficial to the defendant. And, in this context, interpreting the statute in the manner most beneficial to Gammage precludes turning a single act into multiple convictions.

Moreover, the language in the statute describing its intent also tends to support a determination that the legislature intended only one prosecution regardless of the number of jurors involved. The mens rea component of the statute provides that its intent is to prevent obstruction of the administration of justice. This can be

accomplished by a defendant whether he or she tampers with one juror or multiple jurors.  Hence, this portion of the statutory language also tends to support a conclusion that a defendant commits only one offense regardless of the number of jurors tampered with during a single criminal episode.

Finally, section 918.12 was last amended in 1997, thirteen years after the supreme court set forth the "a/any" test in Grappin, see ch. 97-102, § 1540, Laws of Fla.; yet the legislature did not clarify this language in response to the Grappin decision, nor has it taken any steps to do so since.  The supreme court has held that "[t]he Legislature is presumed to know the judicial constructions of a law when amending that law, and *the Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed.*"  Zommer v. State, 31 So. 3d 733, 754 (Fla. 2010) (alteration in original) (quoting Fla. Dep't of Children & Families v. F.L., 880 So. 2d 602, 609 (Fla. 2004)).  While the courts have not specifically construed the tampering statute under the "a/any" test, courts have done so with multiple other statutes.  Nevertheless, the legislature has not taken any steps to amend the tampering statute, even with the presumed knowledge that it would be subject to judicial construction under the "a/any" test.  Since the legislature has not amended section 918.12 in the twenty-five years since the Grappin decision issued, it can be safely presumed that the legislature agrees with the court's application of the "a/any" test and understands and accepts the interpretation of the tampering statute that will result from its application.  And as noted, this application results in a determination that only one offense occurs regardless of the number of jurors tampered with in a single criminal episode.

Hence, because the conflicts in the statutory language render it ambiguous as to the intended unit of prosecution, the rule of lenity requires this court to conclude that only one prosecution will be permitted regardless of the number of jurors tampered with in a single criminal episode. Therefore, we must next consider whether Gammage's girlfriend's approach to each prospective juror constituted a separate criminal episode and, if so, whether each approach constituted a distinct act that would permit multiple punishments.

**2.          Separate Criminal Episodes**

> The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

State v. Paul, 934 So. 2d 1167, 1171 (Fla. 2006) (footnote omitted) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989)), receded from on other grounds by Valdes v. State, 3 So. 3d 1067 (Fla. 2009). As to the third of these protections, double jeopardy bars multiple convictions for multiple crimes only if those crimes occur during a single criminal episode. Id. at 1172. "In order to determine whether offenses occurred during a single criminal episode, courts look to whether there are multiple victims, whether the offenses occurred in multiple locations, and whether there has been a 'temporal break' between offenses." Id. at 1172-73 (quoting Murray v. State, 890 So. 2d 451, 453 (Fla. 2d DCA 2004)); see also Cabrera v. State, 884 So. 2d 482, 484 (Fla. 5th DCA 2004) (holding that for crimes to be considered to have occurred in more than one criminal episode, there must be a sufficient temporal break between the two acts to allow the

defendant to form a new criminal intent for each offense); Williams v. State, 804 So. 2d 572, 574 (Fla. 5th DCA 2002); Smith v. State, 650 So. 2d 689, 691 (Fla. 3d DCA 1995). When the facts underlying the determination of whether double jeopardy has been violated are undisputed, the determination of whether a violation has occurred is a legal one that is reviewed de novo. See Paul, 934 So. 2d at 1171 (citing State v. Florida, 894 So. 2d 941, 945 (Fla. 2005)).

Here, the facts underlying the determination are undisputed. The attachments to the postconviction court's order show that Gammage's girlfriend handed out three flyers during an approximately twenty-minute period—two in the parking lot north of the courthouse and one on the east sidewalk leading to the courthouse. All of these acts occurred in an area smaller than one city block, and there was no temporal break between the acts other than what was necessary to approach the various individuals as they approached the courthouse. There were no intervening acts. There was no change in location. And there is nothing in the record to show that a new criminal intent was formed. Instead, the testimony attached to the postconviction court's order shows but a single intent, i.e., to approach as many prospective jurors as possible before Gammage's drug trial started and hand each of them a flyer. Hence, the facts as found by the postconviction court establish that there was but a single criminal episode.

The State contends that because Gammage's girlfriend approached the prospective jurors at three separate locations on the courthouse grounds, the events constituted separate criminal episodes and so multiple punishments are permissible. The State cites to Nicholson v. State, 757 So. 2d 1227 (Fla. 4th DCA 2000), in support of its position. In Nicholson, the defendant was charged with two counts of throwing any

- 11 -

missile into a dwelling in violation of section 790.19, Florida Statutes, after he threw one brick through the back window of the victim's home and then ran to the other side of the house and threw another brick through another window.  Id. at 1228.  In affirming the two convictions, the court concluded that because "[t]he bricks were thrown at discrete times and from discrete locations[, i]t clearly required separate intent to throw a brick through the patio door at the rear of the house and then, after running to the front of the house, to throw a brick through a front window."  Id.  Hence, the court affirmed the dual convictions.[2]  Id.

While that case is instructive, Gammage's case is more akin to the situation in Wallace.  There, Wallace was convicted of two counts of resisting an officer with violence, along with numerous other offenses, after an altercation between him and two police officers who were trying to arrest him.  724 So. 2d at 1177.  On appeal, Wallace alleged that the two resisting convictions were improper because the evidence showed only one continuous resistance of the attempted arrest in a single episode.  Id.  In rejecting the State's argument that the resistance against each officer constituted a separate episode, the supreme court explained:

> We note that if multiple prosecutions were allowed, a
> defendant could be prosecuted for numerous other charges
> such as aggravated assault and aggravated battery upon a
> police officer as was Wallace here, in addition to an endless
> number of counts of resisting simply depending upon the
> number of officers present.  We do not believe the legislature

---

[2]Nicholson also challenged his convictions based on the statutory language criminalizing the act of throwing "any" missile into a dwelling, contending that there should be only one prosecution under the "a/any" test.  Nicholson, 757 So. 2d at 1228.  However, the appellate court did not decide the issue on that basis, holding that "[t]he 'any/a' dichotomy need not concern us here, as the two acts were clearly separate in both time and space such as to be properly considered as two separate offenses."  Id.

- 12 -

intended such consequences. While the defendant may have committed more than one offense in his altercation with the officers, including possibly multiple assaults or batteries, or both, on law enforcement officers as were separately charged here, <u>we conclude that his continuous resistance to the ongoing attempt to effect his arrest constitutes a single instance of obstruction</u> . . . .

<u>Id.</u> at 1180-81 (emphasis added).

Here, as in <u>Wallace</u>, the record shows that Gammage's girlfriend's act of handing out flyers was one continuous episode in which she attempted to influence any and all of the prospective jurors who arrived at the courthouse that morning. Just as Wallace had a single impulse to resist arrest regardless of the number of officers attempting that arrest, Gammage's girlfriend had a single impulse to influence prospective jurors regardless of the actual number of prospective jurors contacted. To hold that Gammage was subject to prosecution based on each individual prospective juror who was handed a flyer would pose the problem that he could be subjected to an endless number of counts of attempted tampering based on the number of prospective jurors who happened to be intercepted by his girlfriend. Such a holding would set the punishment based on the expediency of the number of prospective jurors arriving during a specific period rather than on the criminal impulse. Therefore, the facts support a conclusion that this was a single criminal episode for purposes of double jeopardy.

**3.      Distinct Acts**

Having determined that all of Gammage's girlfriend's acts occurred during a single criminal episode, we must still consider whether her acts constituted "distinct acts." <u>See</u> <u>State v. Drawdy</u>, 136 So. 3d 1209, 1213 (Fla. 2014) (holding that if multiple offenses occur within the same criminal episode, "double jeopardy is not implicated

- 13 -

where each offense is a 'distinct criminal act' "); see also Paul, 934 So. 2d at 1172 n.3 ("Of course, if two convictions occurred based on two distinct criminal acts, double jeopardy is not a concern."); Partch, 43 So. 3d at 760 (considering an allegation of a double jeopardy violation and stating that "[i]f the charge did occur during the same transaction or episode, we must then determine if the convictions were predicated on distinct acts").  This analysis is particularly pertinent when the defendant is charged multiple times under the same statute.  As the supreme court has held,

> Blockburger [v. United States, 284 U.S. 299 (1932)] ultimately provides courts with two tests to apply: (1) where the defendant is convicted multiple times under the same statute for acts that occurred during the course of a single criminal episode, a "distinct acts" test is used, but (2) where a defendant is convicted under multiple statutes for one act, the "different elements" test applies.

Graham v. State, 207 So. 3d 135, 141 (Fla. 2016) (emphasis added).  And as this court recently explained,

> Pursuant to the "distinct acts" test, a single criminal impulse may be punished only once "no matter how long the action may continue," while separate, successive impulses may be punished separately "even though all unite in swelling a common stream of action."  Graham, 207 So. 3d at 139 (quoting Blockburger, 284 U.S. at 302).  In determining whether acts are "distinct," courts consider "factors such as whether there was (1) a temporal break between the acts, (2) intervening acts, (3) a change in location between the acts; and/or (4) a new criminal intent formed."  Partch v. State, 43 So. 3d 758, 761 (Fla. 1st DCA 2010) (citing Hayes v. State, 803 So. 2d 695, 700 (Fla. 2001)).

Jacobs v. State, 272 So. 3d 838, 841 (Fla. 2d DCA 2019).

As can be readily seen, the "distinct acts" test requires consideration of the same elements that are considered when determining whether the defendant's actions arose from a single criminal episode.  And, as discussed above, here those

elements show that Gammage's girlfriend's actions were not "distinct acts" but rather were part of a single "common stream of action" for which Gammage could only be punished once. Therefore, double jeopardy precluded prosecuting Gammage for multiple attempts at tampering with jurors that occurred during a single criminal episode because those acts did not constitute distinct criminal acts. Hence, the multiple convictions violate double jeopardy.

**4.        Conclusion**

In sum, to hold that Gammage was subject to prosecution for each individual flyer based on an intended attempt to effect but one trial, occurring on the same time and space, under the statutory use, linguistically, of the word "any," would run afoul of double jeopardy. Because the ambiguity in the statutory language requires us to apply the rule of lenity and because Gammage's girlfriend's actions toward the prospective jurors occurred during a single criminal episode but did not constitute "distinct criminal acts," two of Gammage's three convictions for attempted tampering with jurors must be reversed as violative of double jeopardy. On remand, the trial court must resentence him using a corrected scoresheet.

Reversed and remanded for further proceedings.

SALARIO and ROTHSTEIN-YOUAKIM, JJ., Concur.