710 So.2d 1000 (1998)
Troy Lee COLLIE, Appellant,
v.
STATE of Florida, Appellee.
No. 96-03945.
District Court of Appeal of Florida, Second District.
May 1, 1998.
*1002 James Marion Moorman, Public Defender, and Frank D.L. Winstead, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Scott A. Browne, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Troy Lee Collie appeals the trial court order designating him to be a sexual predator. We affirm.
In July 1994, the State charged Collie with sexual battery and two other felonies committed on June 27, 1994. In September 1994, Collie entered an open plea of nolo contendere to all three counts. The court accepted Collie's plea and placed him on community control for two years followed by five years of probation on Count I. In March 1996, Collie admitted that he violated his community control in exchange for a sentence of five years' prison, with credit for time served, which the court accepted and imposed.
Approximately twenty weeks after Collie had been sentenced, the State filed a notice of hearing to declare him to be a sexual predator. The trial court held a hearing, and found that Collie met the criteria for being declared a sexual predator and entered an order based upon its determination, stating that "[t]he Defendant meets the definition of sexual predator contained in former Florida Statute § 775.23(2) and/or as defined in Florida Statute § 775.21 as amended July 1, 1996."
Collie raises five issues in this appeal: (1) that the court lacked jurisdiction to declare him to be a sexual predator; (2) that the court failed to comply with the express requirements of section 775.23(3), Florida Statutes (1993); (3) that the court violated his plea bargain and double jeopardy rights when it declared him a sexual predator; (4) that the court violated his due process rights when it failed to provide him notice and an opportunity to be heard before declaring him a sexual predator; and (5) that the court violated his constitutional right to counsel when the sexual predator hearing was held without representation of counsel.
I. HISTORICAL REVIEW OF THE ACT.

1993 Act.
On October 1, 1993, the legislature enacted The Florida Sexual Predator's Act ("Act") which was codified at section 775.21-.23, Florida Statutes (1993). The 1993 Act consists of three parts: (1) legislative findings,[1] (2) registration requirements, procedures, and penalties,[2] and (3) the sexual predator definition.[3] Section 775.23, Florida Statutes (1993), defines a "sexual predator" as:
[A]n offender who is convicted on the current offense of or is found to have committed, regardless of adjudication, or who pleads nolo contendere or guilty to:
(a) Any capital, life, or first degree felony violation of chapter 794 or s. 847.0145, or of a similar law of another jurisdiction; or
(b) Any second degree or greater felony violation of chapter 794, s. 800.04, s. 827.071, or s. 847.0145, or of a similar law of another jurisdiction, and who has previously been convicted of or found to have committed, regardless of adjudication, or has pled nolo contendere or guilty to, any violation of s. 794.011(2), (3), (4), or (5), s. 794.023, s. 794.041(2)(a) or (b), s. 800.04, s. 827.071, s. 847.0133, or s. 847.0145, or of a similar law of another jurisdiction.
§ 775.23(2), Fla. Stat. (1993) (footnote omitted). However, the current offense must have been "committed on or after October 1, 1993." § 775.23(3), Fla. Stat. (1993).
*1003 Section 775.23, Florida Statutes (1993), also states that the trial court "shall make a written finding that an offender is a sexual predator" upon sentencing, if the offender meets the sexual predator definition. See § 775.23(3), Fla. Stat. (1993).
Those designated as sexual predators under the 1993 Act are required to comply with the registration requirements of section 775.22, Florida Statutes (1993). The legislative purpose of the registration requirement is "to enhance the public safety by requiring the registration of sexual predators, providing for the monitoring of their activities and the tracking of their whereabouts, and facilitating law enforcement and prosecution." § 775.22(1), Fla. Stat. (1993). Registration requires the sexual predator to provide his or her full description, a photograph, and residence and employment information to the Florida Department of Law Enforcement (FDLE) within forty-eight hours of entering a county of permanent or temporary residence, after being released from a correctional or treatment facility. If the sexual predator changes his or her permanent or temporary address after the initial registration, he or she must provide written notification to the department of his or her new temporary or permanent address within forty-eight hours after arrival at the new place. See § 775.22(3)(b)1, Fla. Stat. (1993).
Any sexual predator who fails to comply with the registration requirement commits a felony of the third degree; and if the offender is on supervised release, the failure to comply with the registration requirement will be considered a violation of the conditions of supervised release. See § 775.22(3)(f)1-2, Fla. Stat. (1993). Certain sexual predators are exempt from the registration requirements.[4]

1995 Act.
In 1994, the New Jersey legislature passed "Megan's Law" in response to the sexual assault and brutal murder of seven-year-old Megan Kanka by a twiceconvicted sex offender who lived nearby. Megan's Law was enacted for the specific purpose of providing parents and others in the community with notice and fair warning of the presence of convicted sex offenders. See Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995) (reciting history of New Jersey's Megan's Law).
Florida's version of Megan's Law was incorporated into The Florida Sexual Predator's Act in 1995 and codified at section 775.225, Florida Statutes (1995). The incorporation of section 775.225 required the legislature to revise its legislative purpose and findings. The 1995 Act asserts that the State's strategy to achieve a significant reduction in the commission of violent and repeat sex offenses includes "[p]roviding for notification of the community concerning the presence of certain sexual predators." § 775.21(2)(b)5, Fla. Stat. (1995). The 1995 legislative findings further state that "[t]he state has a compelling interest in protecting the public from serious sex offenses, and there is sufficient justification for requiring that the public be notified of the presence of certain sexual predators." § 775.21(2)(d), Fla. Stat. (1995). The legislative intent of the 1995 Act was amended to require that "the sheriff or chief of police ... notify the public if, after a hearing, the circuit court finds that a sexual predator poses a threat to the public." § 775.21(3), Fla. Stat. (1995).
The sexual predator definition under the 1995 Act remained virtually unchanged from the 1993 Act.[5]Compare § 775.23(2), Fla. Stat. (1995), with § 775.23(2), Fla. Stat. (1993). However, the registration procedure was amended to require the FDLE to do the following:
[N]otify a sexual predator who registers with the department for an offense committed on or after October 1, 1995, of the requirement for a hearing before the circuit court for the county where the sexual *1004 predator permanently or temporarily resides... to determine whether the sexual predator poses a threat to the public.[6]
§ 775.22(3)(d), Fla. Stat. (1995) (emphasis provided; footnote added).
The incorporation of section 775.225 was the major amendment in the 1995 Act. This section provides specific procedures to accomplish the legislative purpose of notifying the public of sexual predators that are deemed to be a threat. After the registration of a sexual predator, section 775.225 requires the state attorney to file a petition with the circuit court for a hearing to determine, by a preponderance of the evidence, whether the sexual predator poses a threat to the public. See § 775.225(1), Fla. Stat. (1995). "At the hearing, the sexual predator has the right to be present, to present testimony, to call and cross-examine witnesses, and to be represented by counsel." Id.
In making its determination of whether the sexual predator poses a threat to the public, the trial court must consider certain enumerated factors, including: the relationship between the sexual predator and the victim; whether the offense involved the use of a weapon or violence; the number of prior offenses; the risk of recidivism; and the sexual predator's response to treatment. See § 775.225(1)(a)-(f), Fla. Stat. (1995). If the trial court determines that the sexual predator "poses a threat to the public and that notice to the community where the sexual predator temporarily or permanently resides is necessary to protect public safety," the court is required to notify the sheriff or the chief of police of that community. § 775.225(2)(a), Fla. Stat. (1995). The sheriff or chief of police then is required to notify the public of the sexual predator's presence by publishing a notice in a newspaper of general circulation once a week for two consecutive weeks. See § 775.225(2)(b), Fla. Stat. (1995). The notice must include:
1. The name of the sexual predator;
2. A description of the sexual predator, including a photograph;
3. The name of the county or municipality where the sexual predator temporarily or permanently resides;
4. The offenses and the circumstances surrounding the conviction of the sexual predator ...; and
5. The age of the victim....
§ 775.225(2)(b)1-5, Fla. Stat. (1995). Presumably, the public notification provisions of section 775.225 do not apply to sexual predators whose current offenses were committed before October 1, 1995. This limitation, while not specifically stated, can be inferred from the language of section 775.22(3)(d), Florida Statutes (1995).

1996 Act.
In 1994, The United States Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub.L. No. 103-322, Title XVII, § 170101, 108 Stat.2038 (1994) (codified at 42 U.S.C. § 14071) (hereinafter "Wetterling Act"). The purpose of this federal legislation was to establish effective sexual predator registration programs in every state.
In 1996, section (d) of the Wetterling Act was amended to authorize the disclosure of an offender's biographical information for "any permitted purpose" and directing State and local law enforcement agencies to release information necessary to protect the public. See Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act Amendments of 1996, Pub.L. No. 104-145, § 2, 110 Stat. 1345 (codified at 42 U.S.C. § 14071(d)).
The amendment to section (d) of the Wetterling Act prompted the Florida Legislature to revise its sexual predator's act on July 1, 1996. The result was a new, comprehensive version of The Florida Sexual Predator's Act, codified at section 775.21, Florida Statutes (Supp.1996). Sections 775.22, 775.225, and 775.23 of the 1995 Act were repealed, but their language was incorporated into the new act with certain changes.
The legislative intent of the 1996 Act was amended to include a strategy of "[p]roviding *1005 for community and public notification concerning the presence of sexual predators." § 775.21(3)(b)4., Fla. Stat. (Supp.1996). This new strategy provides for community and public notification of all sexual predators, whereas the notification strategy of the 1995 Act was limited to "certain" sexual predators as determined pursuant to section 775.225, Florida Statutes (1995). The 1996 Act also adopted a new strategy of "[p]rohibiting sexual predators from working with children, either for compensation or as a volunteer." § 775.21(3)(b)5., Fla. Stat. (Supp.1996).
To effectuate this new strategy, the legislature enacted a new community and public notification subsection which was codified at section 775.21(7), Florida Statutes (Supp. 1996). This subsection provides in part:
Law enforcement agencies must inform the community and the public of a sexual predator's presence. Upon notification of the presence of a sexual predator, the sheriff of the county or the chief of police of the municipality where the sexual predator temporarily or permanently resides shall notify the community and the public of the presence of the sexual predator in a manner deemed appropriate by the sheriff or the chief of police.
§ 775.21(7)(a), Fla. Stat. (Supp.1996). Moreover, the 1996 Act provided that "[s]tatewide notification to the public is authorized, as deemed appropriate by local law enforcement personnel and the department." § 775.21(7)(b), Fla. Stat. (Supp.1996).
Unlike the 1995 Act, the community and public notification subsection of the 1996 Act does not provide for a separate hearing to determine whether a sexual predator poses a threat to the public prior to notification. Instead, all offenders classified as sexual predators under the 1996 Act are subject to the community and public notification provisions of section 775.21(7), Florida Statutes (Supp. 1996).
Significantly, however, the community and public notification provisions of the 1996 Act have no retrospective application. The 1996 Act separates sexual predators into three categories. The first category includes those offenders whose current offenses occurred between October 1, 1993, and October 1, 1995. This category of offenders is not subject to any community and public notification. See § 775.21(4)(a), Fla. Stat. (Supp.1996). The second category includes those offenders whose current offenses occurred between October 1, 1995, and October 1, 1996. This category of offenders is subject to the community and public notification provisions of the former section 775.225, Florida Statutes (1995), but not those found in the 1996 Act. See § 775.21(4)(b), Fla. Stat. (Supp.1996). The third category of offenders includes those offenders whose current offenses occurred after October 1, 1996. It is this category, and only this category, that is subject to the new community and public notification provisions of the 1996 Act. See § 775.21(4)(c), Fla. Stat. (Supp.1996).
On the other hand, the sexual predator criteria subsection in the 1996 Act does have a retrospective application. Section 775.21(4), Florida Statutes (Supp.1996), specifically permits trial courts to designate offenders, who committed their current offenses between October 1, 1993, and October 1, 1995, as sexual predators after they have been sentenced for the current offense. Section 775.21(4)(a)2 states:
(a) For a current offense committed on or after October 1, 1993, and before October 1, 1995:

. . . . .
2. If an offender has been registered as a sexual predator by the Department of Corrections, the [Department of Law enforcement], or any other law enforcement agency and:

a. The court did not, for whatever reason, make a written finding at the time of sentencing that the offender was a sexual predator, or
b. The offender was administratively registered as a sexual predator because the Department of Corrections, the department, or any other law enforcement agency obtained information which indicated that the offender met the sexual predator criteria based on a violation of a similar law in another jurisdiction,
the department shall remove that offender from the department's sexual predator list, *1006 and shall notify the state attorney who prosecuted the offense that triggered the administrative sexual predator designation for offenders described in sub-subparagraph a., or the state attorney of the county where the offender permanently or temporarily resides on October 1, 1996, for offenders described in sub-subparagraph b. The state attorney may bring the matter to the court's attention in order to establish that the offender meets the sexual predator criteria. If the court then makes a written finding that the offender is a sexual predator, the offender is designated as a sexual predator and must register or be registered with the department ... If the court does not make a written finding that the offender is a sexual predator, the offender is not designated as a sexual predator with respect to that offense, is not required to register or be registered as a sexual predator with the department....
§ 775.21(4)(a)2, Fla. Stat. (Supp.1996) (emphasis supplied). A similar provision, relating to offenders whose current offenses occurred between October 1, 1995, and October 1, 1996, can be found at section 775.21(4)(b)2, Florida Statutes (Supp.1996).
Sections 775.21(4)(a)2 and (b)2, Florida Statutes (Supp.1996), are a substantial change from the 1993 and 1995 Acts which required that the sexual predator designation be made "at sentencing." See §§ 775.23(3), Fla. Stat. (1993); 775.23(3), Fla. Stat. (1995). It is this change that has prompted Collie's appeal to this court.
II. JURISDICTION.
Florida Rule of Criminal Procedure 3.800(c) permits the sentencing court, within sixty days of the imposition of the sentence, to modify and/or reduce the sentence. Based on this rule, Collie argues that the trial court lacked jurisdiction to reopen his case after the sixty-day time period expired, for the purpose of designating him to be a sexual predator.
In Fletcher v. State, 699 So.2d 346 (Fla. 5th DCA 1997), the Fifth District confronted this issue and held that the sexual predator designation was not an impermissible modification of the offender's sentence more than sixty days after the imposition of the original sentence "because the designation `sexual predator' is neither a sentence nor a punishment but simply a status resulting from the conviction of certain crimes." Id. at 347.
We agree with the Fifth District's conclusion. Drawing from the analysis found later in this opinion, because the registration provisions retrospectively applied to Collie are not punishment, the sexual predator designation cannot be considered a sentence. The word sentence is defined as the imposition of criminal punishment. See McDaniel v. State, 683 So.2d 597 (Fla. 2d DCA 1996) (holding that the revocation of a driver's license is not a sentence because no criminal punishment is imposed; therefore, it was not subject to correction through a 3.800 motion). Thus, rule 3.800 and the Florida Rules of Criminal Procedure, in general, do not apply to the sexual predator designations made in this case.
The trial court's jurisdiction in this case was conferred by the 1996 Act itself. See State ex rel. Caraker v. Amidon, 68 So.2d 403 (Fla.1953) (stating that subject matter jurisdiction is conferred upon a court by a constitution or a statute). That jurisdiction permitted the trial court in this case to make the retrospective sexual predator designation. See § 775.21(4)(a)2, Fla. Stat. (Supp. 1996). Accordingly, the trial court did not exceed its jurisdiction in designating Collie to be a sexual predator more than sixty days after sentencing.
III. COMPLIANCE WITH SECTION 775.23, FLORIDA STATUTES (1993).
Collie argues that because the court failed to declare him to be a sexual predator at sentencing and then applied the 1996 Act, as re-enacted, to declare him to be a sexual predator, the court violated the ex post facto prohibitions.
The constitutional prohibition on ex post facto laws only applies to penal statutes which disadvantage the offender affected by them. See Collins v. Youngblood, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990). The issue here is whether section 775.21, Florida Statutes (Supp.1996), makes *1007 more burdensome the punishment for a qualifying sex offense, after its commission. In Gwong v. Singletary, 683 So.2d 109 (Fla. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1018, 136 L.Ed.2d 894 (1997), the Florida Supreme Court established a two-prong test for determining whether a law violates the Ex Post Facto Clause: "(1) whether the law is retrospective in its effect; and (2) whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Id. at 112.
Applying Gwong to this case, the first prong is satisfied because the State concedes that it is employing section 775.21(4)(a)2, Florida Statutes (Supp.1996), for the purpose of seeking a sexual predator designation, retrospectively. Turning to the second prong, we now must decide whether the retrospective application of section 775.21, Florida Statutes (Supp.1996), will increase the penalty by which the sex offense is punishable. See Beazell v. Ohio, 269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925); Gwong, 683 So.2d at 112. To make that determination, we must review the law that was in effect at the time that Collie committed his offenses.
The provisions of the 1996 Act that have retrospective application are, for the most part, the same as those in the previous Acts. First, the definition of a sexual predator has remained the same in all three versions of the Act. Second, the 1996 Act provides that sexual predators shall be subject to the community and public notification provisions in effect at the time they committed their current offenses. See § 775.21(4)(a), (b), Fla. Stat. (Supp.1996). Finally, all three versions of the Act require some form of registration. The changes in the registration procedure do not violate the Ex Post Facto Clause. See Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 243 (Fla.1977) (holding that procedural provisions may be applied retrospectively regardless of the language in the statute, because no one has a vested interest in any given mode of procedure).
Other than procedural changes, the only subsections in the 1996 Act, which could be perceived as having retrospective application, that differ from the previous Acts are: (1) the subsection which authorizes the FDLE to disseminate the "public information" in its sexual predator file by "any means deemed appropriate," § 775.21(6)(d)2, Fla. Stat. (Supp.1996); and (2) the subsection restricting the employment and volunteer work of sexual predators whose victims were minors. See § 775.21(9)(b), Fla. Stat. (Supp. 1996).
It is important to remember, however, that the 1996 Act replaced the 1995 Act which was repealed. In McKibben v. Mallory, 293 So.2d 48 (Fla.1974), the Florida Supreme Court stated that:
[W]here a statute has been repealed and substantially re-enacted by a statute which contains additions to or changes in the original statute, the re-enacted provisions are deemed to have been in operation continuously from the original enactment whereas the additions or changes are treated as amendments effective from the time the new statute goes into effect.
Id. at 53. Therefore, sections 775.21(6)(d)2 and (9)(b) which are new substantive provisions found only in the 1996 Act, cannot be applied retrospectively to Collie.
Nevertheless, we must recognize that at some future date, the FDLE may attempt to disseminate the "public information" in Collie's sexual predator file in accordance with section 775.21(6)(d)2, Florida Statutes (Supp. 1996). Likewise, at some future date, the State may attempt to enforce the employment and volunteer restrictions in section 775.21(9)(b), Florida Statutes (Supp.1996), against Collie. In either event, Collie would be entitled to reassert his ex post facto challenge because the provisions contained in sections 775.21(6)(d)2 and (9)(b), Florida Statutes (Supp.1996), may be considered punitive in nature depending on the manner in which they are applied.
However, because Collie has not argued on appeal that sections 775.21(6)(d)2 and (9)(b) have been applied to him, that specific ex post facto argument is not ripe for review at this time. See Artway v. Attorney General of State of N.J., 81 F.3d 1235 (3d Cir.1996). It is well settled that Florida courts will not consider hypothetical acts when assessing a *1008 statute's constitutionality. See Sandstrom v. Leader, 370 So.2d 3, 6 (Fla.1979).
Accordingly, Collie's ex post facto challenge must be denied at this time. The application of section 775.21, Florida Statutes (Supp.1996), did not increase the penalty by which Collie's sex offense was punishable. The requirements under the 1996 Act that were not present under the preceding Acts either do not apply to Collie or are procedural requirements which do not constitute punishment and may be applied retrospectively. Therefore, the retrospective application of section 775.21, Florida Statutes (Supp.1996), in this case, does not violate the Ex Post Facto Clauses of the United States and Florida Constitutions.
IV. PLEA BARGAIN AND DOUBLE JEOPARDY RIGHTS.
Collie argues that both his plea bargain and double jeopardy rights were violated when he was brought back to court for sexual predator designation, post-sentencing and after he had entered into a valid plea agreement. See Illinois v. Vitale, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980) (double jeopardy rights provide freedom from multiple punishments for the same offense).

Plea Bargain
Collie asserts that the sexual predator designation constitutes a breach of contract because it imposes punishment beyond that to which he contractually agreed. In Benitez v. State, 667 So.2d 476 (Fla. 3d DCA 1996), the Third District Court held that the sexual predator designation was a collateral consequence of the guilty plea and the court was not required to advise the defendant of this consequence during the plea colloquy. We agree.
Additionally, Collie was on notice that he would be subject to sexual predator classification by its publication in the statute. "As to notice, publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions." State v. Beasley, 580 So.2d 139, 142 (Fla.1991). Accordingly, we hold that Collie's plea bargain was not violated by his subsequent sexual predator designation.
We further find that designating an offender to be a sexual predator after he or she has entered a plea bargain does not constitute a breach of contract because the sexual predator designation is not a form of punishment. As we will demonstrate later in this opinion, designating an offender to be a sexual predator is a regulatory act done for remedial purposes. The "object" of the plea bargain is the punishment, and the object remains unchanged even though the sexual predator designation is made. Therefore, the Act should apply regardless of whether the offender was convicted after trial or through a plea bargain.

Double Jeopardy
To ascertain whether Collie's classification as a sexual predator violates the prohibition against double jeopardy, we must determine whether the sexual predator designation and its accompanying registration requirements constitute punishment. In United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the Supreme Court stated that the Double Jeopardy Clause "serves the function of preventing both `successive punishments and ... successive prosecutions.'" Id. at 271, 116 S.Ct. at 2139 (quoting United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993)); see United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); State v. Wilson, 680 So.2d 411, 413 (Fla.1996).
In Ursery, the Supreme Court developed a two-prong test to determine whether a regulation is punitive for double jeopardy purposes. Under the first prong, the court must look at the legislative intent to determine whether the regulation was intended to be punitive or remedial. If the legislative intent was for the regulation to be punitive, then the analysis is complete and the regulation violates double jeopardy. However, if the legislative intent was for the regulation to be remedial, the court must evaluate the second prong which is whether the regulation is so punitive in fact that it may not legitimately *1009 be viewed as remedial in nature. See Ursery, 518 U.S. at 276, 116 S.Ct. at 2141.
Therefore, in accordance with Ursery, we shall begin our analysis by reviewing the legislative intent of the 1996 Act. Section 775.21(3), Florida Statutes (Supp.1996), states in relevant part:
(3) LEGISLATIVE FINDINGS AND PURPOSE; LEGISLATIVE INTENT.
(a) Repeat sex offenders, sex offenders who use physical violence, and sex offenders who prey on children are sexual predators who present an extreme threat to the public safety. Sex offenders are extremely likely to use physical violence and to repeat their offenses, and most sex offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. This makes the cost of sex offender victimization to society at large, while incalculable, clearly exorbitant.
(b) The high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with a sufficient justification to implement a strategy
...
(c) The state has a compelling interest in protecting the public from sexual predators and in protecting children from predatory sexual activity, and there is sufficient justification for requiring sexual predators to register and for requiring community and public notification of the presence of sexual predators.
This statement of legislative findings, purpose, and intent evinces a clear intent to protect the public. Moreover, there is no evidence anywhere in the statute to indicate an intent to punish. Therefore, under the first prong of the Ursery test, the legislative intent of section 775.21, Florida Statutes (Supp.1996), is nonpunitive and remedial.
The second prong requires a determination of whether the statutory scheme is so punitive that it negates the nonpunitive intent. In many cases involving double jeopardy challenges to sex offender registration statutes, courts have applied the seven factors enumerated in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963),[7] to determine whether the statute is punitive despite a nonpunitive legislative intent. See, e.g., Rowe v. Burton, 884 F.Supp. 1372, 1378 (D.Alaska 1994); State v. Noble, 171 Ariz. 171, 175, 829 P.2d 1217 (1992); State v. Myers, 260 Kan. 669, 681, 923 P.2d 1024, 1033 (1996). The factors are:
[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishmentretribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned....
See Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct at 567-68 (footnotes omitted).
In Ursery, the Supreme Court also considered some of the Mendoza-Martinez factors in conducting its double jeopardy analysis. See Ursery, 518 U.S. at 289-93, 116 S.Ct. at 2148-49. Therefore, we find that they are appropriate for consideration here. We conclude that for the 1996 Act, as applied to Collie, these factors reflect a nonpunitive nature.
First, we find that the registration requirements imposed on sexual predators do not constitute an affirmative disability or restraint. The offender is not restricted in his movements into or out of a community and is required only to provide a package of information to the appropriate authorities. Moreover, registration does not affirmatively place limitations on the offender's activities.
*1010 The only exception here would be the restrictions placed on employment and volunteer work for offenders whose victims were minors pursuant to section 775.21(9)(b), Florida Statutes (Supp.1996). However, as we stated in the ex post facto analysis above, section 775.21(9)(b) is not applicable to Collie because his current offense was committed prior to its incorporation in the 1996 Act. See McKibben, 293 So.2d at 53. Therefore, we do not consider this provision to be an affirmative disability or restraint to Collie at this time.[8]
Second, registration is not a historical form of punishment. In fact, registration is widely accepted as a public duty in other contexts such as the Selective Service System, the census, and voting. The registration of sexual predators under Florida's Sexual Predator's Act merely organizes the sexual predator's biographical information into a data bank for use by law enforcement authorities.
The only aspect of the sexual predator statute which may be perceived to be a historical form of punishment is the community and public notification provisions. Some may say that the notification provisions are akin to the infamous badge of punishment, the "Scarlet Letter," and may lead to public stigma and ostracism. However, under the 1996 Act, the only offenders who are subjected to any form of community and public notification, retrospectively, are those offenders whose current offenses were committed between October 1, 1995, and July 1, 1996.[9] Collie is not included in this category, but as to those offenders who are, section 775.21(4)(b)2, Florida Statutes (Supp.1996), provides that community and public notification will be governed by the former section 775.225, Florida Statutes (1995). The public disclosure permitted under section 775.225 was limited to "certain" sexual predators who were determined to be a "threat to the public" after notice and a hearing. Therefore, we conclude that the procedural safeguards built into section 775.225, Florida Statutes (1995), lessen the overall impact of community and public notification to such an extent that it too cannot be considered a historical form of punishment.
Third, the scienter element, if there is one, only comes into play when the offender is adjudicated guilty of the underlying offense(s). However, the fact that scienter is involved, even at such preliminary stages, may indicate that the law is punitive. Nevertheless, "[t]his factor must necessarily be considered a light weight in the balance, for, if accorded substantial significance, it would dictate decisions which could not be squared with the result in cases like United States v. Huss ...."[10]Rowe, 884 F.Supp. at 1378-79.
Fourth, while we find that the operation of the registration requirements (and the public notification requirements for offenders whose crimes were committed between October 1, 1995, and July 1, 1996) have some deterrent effects, these effects are de minimis in light of the nonpunitive aim; specifically, protecting the public. The Act is intended to regulate the conduct of violent sex offenders, *1011 repeat sex offenders, and sex offenders who prey on children. See § 775.21(3)(a), Fla. Stat. (1996). If these offenders are not deterred by the terms of incarceration that they face, it would be difficult to assume that they will be deterred by the possibility of registration and/or limited public notification.
Fifth, when a trial court designates a sex offender to be a "sexual predator," it is because the offender's crimes qualified him or her for the designation. To that extent, the behavior to which the designation applies is already a crime. "However, as with the scienter factor, this factor cannot be given great weight without essentially dictating a result contrary to established precedent, such as United States v. Huss, supra." Rowe, 884 F.Supp. at 1379.
Sixth, it cannot be said that the registration provisions are rationally connected to any alternative purpose. The registration and the limited public notification provisions in the 1996 Act, as applied retrospectively, simply provide information to law enforcement authorities and in some instances, the public, for the purpose of protecting the public. "This factor is one which points away from a punitive effect, for it discloses a benign, indeed laudable, effect." Id.
Finally, the application of the 1996 Act is not excessive in relation to its intended purpose. As stated above, the registration requirements are limited to providing a package of information to the appropriate state department. Also, the public notice requirements under section 775.225, Florida Statutes (1995), contain substantial procedural safeguards to prevent the unnecessary disclosure of information. The Florida Legislature, who has a duty to enact laws that protect the health and safety of this state's citizens, has determined that the registration and public notification approach to the repeat sex offender problem is a better approach than the alternatives, such as involuntary civil commitment. See, e.g., Kansas v. Hendricks, ___ U.S. ___, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (approving a Kansas statute which provides for the involuntary civil commitment of certain violent sex offenders). We find that the registration requirement Collie faces is one of the least restrictive methods available to reduce the incidence of sexual predatory behavior and must be considered insignificant in comparison to the goal of protecting the public.
After weighing the Mendoza-Martinez factors, we conclude that the registration requirements of section 775.21, Florida Statutes (Supp.1996), are not so punitive as to negate the legislature's clearly nonpunitive intent.[11]See Ursery, 518 U.S. at 271-73, 116 S.Ct. at 2139. Accordingly, we hold that the application of the 1996 Act in this case does not violate the Double Jeopardy Clauses of the United States and Florida Constitutions.[12] Collie, who has the burden here, has failed to prove otherwise. See E.B. v. Verniero, 119 F.3d 1077 (3rd Cir.1997), cert. denied, 66 U.S.L.W. 3399, ___ U.S. ___, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) (holding that New Jersey's Megan's Law, which established sexual offender registration and community notification provisions, was nonpunitive and did not violate the double jeopardy or ex post facto clauses).

V. DUE PROCESS RIGHTS.
Collie argues that because he was designated to be a sexual predator in a hearing in which he was not present nor *1012 represented by an attorney, his procedural due process rights were violated. Procedural due process contemplates that the "defendant shall be given fair notice" and "a real opportunity to be heard and defend in an orderly procedure, before judgment is rendered against him." Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991) (quoting State ex rel. Gore v. Chillingworth, 126 Fla. 645, 657-58, 171 So. 649, 654 (1936)).
However, the application of procedural due process is limited to situations involving deprivations of "life, liberty or property." State, Dept. of Health & Rehabilitative Servs. v. Cox, 627 So.2d 1210, 1217 (Fla. 2d DCA 1993), aff'd in part, rev'd in part, 656 So.2d 902 (Fla.1995) ("Both the United States Constitution and the Florida Constitution limit the application of due process to deprivations of `life, liberty or property.' "). Therefore, we initially must determine if the 1996 Act, as applied in this case, deprives Collie of life, liberty, or property.
In our attempt to identify deprivations of life, liberty, or property we can immediately rule out deprivations of life. We also find that the 1996 Act does not require the forfeiture of any property rights. Therefore, any procedural due process rights in this case necessarily will stem from a deprivation of Collie's liberty.
Collie argues that the sexual predator designation, by itself, infringes on his liberty rights. We reject this argument because we have determined that the sexual predator statute, as applied to Collie, is nonpunitive and remedial in nature.
Thus, we must look to other liberty rights. Our review identifies only one provision in the 1996 Act which, if applied retrospectively, would infringe on a constitutionally-protected liberty interest. That provision is the employment restrictions imposed in section 775.21(9)(b), Florida Statutes (Supp.1996).[13] In other words, the rest of section 775.21, Florida Statutes (Supp.1996), does not affect Collie's liberty to such an extent that his procedural due process rights would be activated.[14]
However, as we have stated above, the employment restrictions imposed in section 775.21(9)(b) are not applicable to Collie because they were not in effect at the time he committed his current offense in June 1994. A retrospective application of section 775.21(9)(b) to Collie would violate the basic rule that where a statute has been repealed and substantially reenacted, new additions or changes to the statute shall be applied prospectively only. See McKibben, 293 So.2d at 53.
Furthermore, Collie has failed to argue on appeal that he is prohibited from pursuing certain employment due to the order designating him to be a sexual predator. Therefore, our review of the 1996 Act, as applied in this case, does not reveal any deprivations of Collie's due process rights. Accordingly, as to Collie, the procedural due process guarantees of a hearing and an opportunity to be heard are inapplicable.

VI. RIGHT TO COUNSEL.
Collie argues that an accused's constitutional right to counsel is guaranteed by the Sixth Amendment of the United States Constitution, which provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. Collie further argues that the Florida Constitution embodies the express right to be heard in person or to be represented by counsel or both, Art. I, § 16, Fla. Const., and where the right to counsel exists, an accused is entitled to counsel at every critical stage of the criminal proceedings. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (presence of counsel at critical confrontations operates to assure that accused's interests will be protected consistently with adversary theory of criminal prosecution); Owen v. State, 596 So.2d 985 (Fla.1992).
*1013 Collie argues that he is indigent and that the right of indigent defendants to the assistance of court-appointed counsel is constitutionally mandated under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2 and 16 of the Florida Constitution. This right is codified in sections 27.51-.52, Florida Statutes (1995), and Florida Rules of Criminal Procedure 3.111, 3.130, and 3.160. See also Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (indigent defendants have constitutional right to court-appointed counsel in felony prosecutions).
However, the right to counsel only extends to criminal and quasi-criminal proceedings. See Hannah v. Larche, 363 U.S. 420, 440 n. 16, 80 S.Ct. 1502, 1513 n. 16, 4 L.Ed.2d 1307 (1960). We have already determined that the 1996 Act, as applied to this case, is remedial in nature and that the sexual predator designation and its accompanying requirements do not impose punishment. Moreover, the legislative intent behind the statute is civil, rather than criminal. See Hendricks, ___ U.S. at ___ _ ___, 117 S.Ct. at 2081-82. Accordingly, we conclude that the sexual predator proceedings were not criminal or quasi-criminal in nature and that Collie had no constitutional right to counsel.
Affirmed.
PARKER, C.J., and PATTERSON and GREEN, JJ., concur.
NOTES
[1] Section 775.21, Florida Statutes (1993).
[2] Section 775.22, Florida Statutes (1993).
[3] Section 775.23, Florida Statutes (1993).
[4] Exemptions apply to: (1) those who have had their civil rights restored and have not committed a felony sex offense subsequent thereto; (2) those who have received a full pardon for any qualifying sex offense; and (3) those whose previous qualifying offense under section 775.23(2)(b) occurred more than ten years prior to October 1, 1993. See § 775.22(3)(c)1-3, Fla. Stat. (1993).
[5] The only change was the inclusion of section 794.011(8) as a qualifying prior sex offense under section 775.22(2)(b), Florida Statutes (1995).
[6] The trial court is under the same obligation when sentencing a sexual predator for an offense committed on or after October 1, 1995. See § 775.23, Fla. Stat. (1995).
[7] In Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), the United States Supreme Court held that it was "punishment" to divest a person of American citizenship for draft evasion or military desertion and the procedural protections of the Fifth and Sixth Amendments applied. See id. at 167, 83 S.Ct. at 567.
[8] Nevertheless, we note that any future application of section 775.21(9)(b), Florida Statutes (Supp.1996), to Collie, in contravention of this opinion could serve as the basis for a double jeopardy challenge. Unlike the registration provisions discussed in this section of the analysis, the employment restrictions appear to be punitive in nature as they severely restrict the offender's constitutional right to pursue a lawful occupation.
[9] We also note that section 775.21(6)(d)2, Florida Statutes (Supp.1996), allows the FDLE to disseminate the sexual predator information in its file by "any means deemed appropriate." However, as we have noted in the ex post facto analysis above, this section is not applicable to Collie because his current offense was committed prior to its incorporation in the 1996 Act. See McKibben v. Mallory, 293 So.2d 48, 53 (Fla. 1974). Nevertheless, we recognize that the application of section 775.21(6)(d) 2, to Collie, in contravention of this court's opinion, could serve as a basis for a double jeopardy argument. Depending upon the manner in which it is applied, section 775.21(6)(d)2 may be considered punitive, as there are no procedural safeguards to protect against the unnecessary dissemination of personal information.
[10] United States v. Huss. 7 F.3d 1444 (9th Cir. 1993) (holding that Oregon law prohibiting felons from possessing a long gun was not an ex post facto law under the United States Constitution. The court reasoned that the law prohibited felons from possessing long guns not as punishment, but in an effort to protect the public "by restricting firearms possession from those likely to engage in dangerous conduct." Id. at 1448).
[11] Although not pertinent to Collie's case, we also find that the public notification requirements of the 1995 Act are not so punitive as to negate the nonpunitive legislative intent.
[12] In light of the complex issues addressed in this double jeopardy analysis, we take solace in the fact that the United States Supreme Court recently reached a similar conclusion in a case involving regulatory measures we consider much more severe than the registration requirements addressed herein. See Kansas v. Hendricks, ___ U.S. ___, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In Hendricks, the State of Kansas sought to apply a new statute which provided for the involuntary confinement of violent sexual predators, against Hendricks, a convicted child molester who was scheduled to be released from prison. See Kan. Stat. Ann. § 59-29a01 et seq. The defendant challenged the Act on substantive due process, ex post facto, and double jeopardy grounds. The Supreme Court rejected the challenges and held that the state's involuntary civil commitment program did not constitute punishment for the purpose of ex post facto or double jeopardy. See Hendricks, ___ U.S. at ___, 117 S.Ct. at 2083.
[13] The constitutional liberty right at issue here is the right to pursue a lawful business or occupation.
[14] The right to privacy found at Article I, Section 23, of the Florida Constitution is not at issue in Collie's case because Collie is not subject to any form of community and public notification, as his current offense was committed on June 27, 1994. See § 775.21(4)(a), Fla. Stat. (Supp.1996).